Appellants= Motion for Rehearing Overruled; Memorandum Opinion of
August 13, 2009, Withdrawn; Affirmed and Substitute Memorandum Opinion on
Rehearing filed December 17, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-01087-CV

_______________

 

HARDAM S. AZAD AND MANOHAR S. MANN, Appellants

 

V.

 

AARON RENTS, INC., D/B/A AARON RENTS, INC., D/B/A
TEXAS AARON RENTS, INC., Appellee

                                                                                                                                             


On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No. 2004-53200

                                                                                                                                             


 

S U B S T I T U T E   M E M O R A N D U M   O P I N I
O N   ON

R E H E A R I N G 

 

On appellants= motion for rehearing, we deny the requested relief, but
withdraw our opinion filed August 13, 2009, and issue this substitute
memorandum opinion.      

In this commercial lease case, Hardam S. Azad and Manohar S.
Mann (collectively, the landlords) appeal a summary judgment in favor of, and
an award of attorney=s fees to,  Aaron Rents, Inc., d/b/a Aaron Rents, Inc., d/b/a
Texas Aaron Rents, Inc. (AAaron@).  In three issues, the landlords contend (1) the pleadings
and summary judgment proof precluded the trial court from granting summary
judgment on Aaron=s affirmative defenses of breach of quiet enjoyment and
breach of conditions subsequent, (2) the pleadings and summary judgment proof
precluded granting summary judgment on an earlier summary judgment motion
(which the court, in fact, denied), and (3) the lease contract precluded the
trial court from rendering a judgment on attorney=s fees.  Because all dispositive
issues of law are settled, we issue this memorandum opinion and affirm.  See Tex. R. App. P. 47.4.

I.  Factual and Procedural Background

In October 2001, the landlords leased Aaron approximately
7,500 square feet of the South Village Shopping Center.  The initial term of
the lease was five years, but the lease contained a provision that, if the
anchor tenant, Auchan Hypermart, at any time ceased business, Aaron could terminate
the lease between the thirty-sixth and the forty-eighth month of the term by
giving a ninety-day notice.  The lease also contained the following warranty of
quiet enjoyment:

35.  Quiet Enjoyment.  Landlord warrants that
it has good and indefeasible fee simple title to the Center, including the
premises, and has the lawful authority to enter into this Lease.  Landlord
further warrants that Tenant, subject to the terms and conditions of this
Lease, will peaceably and quietly hold and enjoy the Premises and use the
Common Areas during the Term without hindrance or interruption, so long as no
Default by Tenant shall occur.

 

Additionally, pursuant to Paragraph 37 of the lease, Aaron=s performance was conditioned on its
ability to obtain the necessary permits and certificates to complete its
build-out of the leased premises and to operate its business.  Paragraph 37
provided, in relevant part:

37.  Conditions
Subsequent.

a.         Landlord and Tenant agree that
their obligations under this Lease are expressly contingent upon the following:








(i) The ability of Tenant to secure, through the
exercise of due diligence and good faith efforts, . . . a Certificate of
Occupancy and such use and other permits and approvals from all appropriate
zoning and other governmental and quasi‑governmental authorities as are
necessary to permit Tenant to . . . conduct its business . . . without any
requirement that . . . Tenant alter or improve the Premises or any . . . sewer
. . . or other system . . . which is contained on or about the Premises . . .;

(ii) The ability of Tenant to secure, through the
exercise of due diligence and good faith efforts, all building and related
permits necessary for Tenant to make its intended Initial Alterations . . . ;

. . .

(iv) The ability of Tenant to secure, through the
exercise of due diligence and good faith efforts, . . . all necessary permits,
. . . easements  and approvals pertaining to the Building, occupancy . . . and
any other governmental permits which, in the sole judgment of Tenant, are
necessary to permit it to construct the Alterations and operate upon the
Premises . . . . Landlord agrees to execute any applications or other documents
requested by Tenant in order to obtain any permits . . . and approvals. . . .

b.         Landlord will provide Tenant
with all reasonable assistance to aid Tenant in obtaining the aforesaid permits
and approvals.

c.         If any of the aforesaid
conditions subsequent is not satisfied . . . upon notice to Landlord, Tenant
may elect to terminate this Lease . . . .

 

Finally, the lease provided for attorney=s fees in actions to enforce, defend,
or interpret the rights under the lease:








30.       Attorney=s Fees.  In
any action, suit or proceeding to enforce, defend or interpret the rights of
either Landlord or Tenant under the terms of this lease or to collect any
amount due landlord or Tenant hereunder, the prevailing party, pursuant to a
final order of a court having jurisdiction over said matter as to which
applicable periods within which to appeal have elapsed, shall be entitled to
recover all reasonable costs and expenses incurred by said prevailing party in
enforcing, defending or interpreting its rights hereunder, including, without
limitation, all collector [sic] and court costs, and reasonable attorney=s and paralegal fees, whether incurred out of court,
at trial, on appeal, or in any bankruptcy proceeding.

 

On January 2, 2002, Aaron opened for business in the leased
premises although many of the renovations and alterations required under the
lease were not complete.  Aaron prepared to complete its build‑out of the
leased premises and applied for building permits from the City of Houston (Athe City@).

On January 16, 2002, the City=s Utility Analysis Section,
Water/Wastewater Department sent two letters, addressed to the landlords,
describing defects with the landlords= property.  In the first letter, the
City explained there was no record of an easement connecting the landlords= property to the nearby city sanitary
sewer.  In the second letter, the City explained the landlords= property was built over an existing
water line and an existing storm sewer easement and the City would require
documentation allowing the encroachments.  In the second letter, the City
stated it would issue no building permit until the problems described in the
letter were resolved:  AUntil such time that proper documentation is presented to
this office allowing this encroachment or the water line/easement is abandoned
and relocated through the City=s Joint Referral Committee, a building permit cannot be
issued.@  The City included an identical
statement regarding the storm sewer easement.  Milton Wells, the landlords= property manager, immediately went
to the City, explained the City=s records were in error, and asked the City to withdraw their
letters.[1]  The City
refused to do so.








Willie Chandler, Aaron=s construction manager, also met with
City personnel.  According to Chandler, Wells had given Chandler a Asingle 82 x 11 inch document plat showing the
layout of the shopping center where the lease[d] premises was [sic] located.@  The City told Chandler the document
was insufficient to solve the easement problem and the landlords would have to
resolve the problem themselves.

In January and February 2002, the landlords and Aaron
exchanged correspondence regarding Aaron=s late or non-payment of rent and the
landlords= failure to obtain a permit before beginning improvements and their
failure to complete the improvements.  By letter dated February 7, 2002, Aaron
also asked the landlords to resolve the easement issues immediately.  According
to Wells, in April 2002, he gave Chandler all the surveys he had obtained in
his research and Chandler said he would take care of what was needed to obtain
a certificate of occupancy.  

Without a building permit, Aaron could not complete its build‑out
of the space and could not obtain a certificate of occupancy.  A certificate of
occupancy is necessary for a business to operate.  According to the landlords= designated expert, if the City
learns a business is occupying a building without a certificate of occupancy,
the City will give it thirty days to obtain one, and if it cannot do so, the
City will lock the premises.  The landlords and their designated expert agreed
that Aaron would not be allowed to obtain the final building permit or the
certificate of occupancy until the easement issues were fully resolved.  The
landlords also agreed the easement issues affected the landlords= ownership of the entire property,
not just the portion leased by Aaron, and knew they had to resolve these issues
in order to re‑lease the property.  The landlords did not fulfill these
conditions while Aaron occupied the leased property.

In March 2003, Auchan closed.  By letter dated April 29,
2003, Aaron notified the landlords it was vacating the leased premises the
following day and intended to seek reimbursement and damages.








On September 24, 2004, the landlords sued Aaron, alleging
claims for breach of the lease.  Aaron answered, raising, among other matters,
the affirmative defense of prior breach by the landlords based on their failure
to (1) obtain a certificate of occupancy, (2) complete all improvements by
October 31, 2001, (3) provide electrical, mechanical, plumbing, sewer, and
heating and ventilation systems in good order, and (4) secure all necessary
permits, licenses, variances, easements and approvals.  Aaron also
counterclaimed against the landlords for expenses incurred in partially building
out the leased space and for its attorney=s fees and expenses, pursuant to both
the lease and Aapplicable Texas Code and Statutes.@

In May 2005, Aaron filed a traditional motion for summary
judgment.  It argued the landlords could not enforce a contract they had
breached before Aaron vacated the premises.  Specifically, Aaron argued the
landlords had breached the contract by failing to deliver a certificate of
occupancy and to complete the improvements by October 31, 2001.  The trial
court orally denied the motion and noted the denial on the docket sheet.

In March 2006, Aaron again moved for traditional summary
judgment on the grounds of the landlords= prior breach of the lease.  In the
2006 motion, Aaron specifically relied on the landlords= obligations under Paragraphs 35
(quiet enjoyment) and 37 (conditions subsequent).  After considering the
pleadings, the motion, the response, and the summary judgment evidence, the
trial court granted the motion.[2]  Aaron
subsequently non-suited its claims for breach-of-contract damages, but
maintained its claims for attorney=s fees and expenses.

The landlords filed a motion for a take-nothing judgment on
Aaron=s claim for attorney=s fees.  The trial court denied the
motion.








Following a non-jury trial on attorney=s fees, the trial court rendered
final judgment, decreeing that the landlords take nothing on their claims
against Aaron.  The trial court found Aaron was the prevailing party, and
ordered that Aaron recover the following amounts from the landlords:  (1)
$75,000 attorney=s fees for trial, (2) $15,291.77 for costs and expenses of
trial, (3) $15,000 if Aaron prevailed in the court of appeals, (4) $5,000 if
either landlord filed a petition for review and the supreme court denied the petition,
(5) $10,000 if Aaron prevailed in any appeal to the supreme court by any party,
and (6) post-judgment interest.  The court further ordered as follows: (1) if
no valid appeal were filed, the trial level amounts would become due and owing
on dates corresponding to the deadlines set forth in Texas Rule of Appellate
Procedure 26.1; and, (2) depending on whether Aaron prevailed on appeal and in
any supreme court review, the corresponding appellate level amounts would
become due and owing on the dates the mandate issued from the court of appeals
or the supreme court.

II.  The Take-Nothing Summary Judgment

In issue one, the landlords contend A[t]he pleadings and summary judgment
evidence precluded@ the trial court from rendering summary judgment (1) on Aaron=s Abreach of quiet enjoyment affirmative
defense@ and (2) on Aaron=s Aconditions subsequent affirmative
defense.@  In issue two, the landlords make
the same argument regarding Aaron=s affirmative defense of the
landlords= prior breach for failing to (1) timely complete improvements and (2)
obtain a certificate of occupancy.[3]








A party moving for traditional summary judgment must
establish that no genuine issue of material fact exists and it is entitled to
judgment as a matter of law.  See Tex. R. Civ. P. 166a(c); Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215B16 (Tex. 2003).  To be entitled to
traditional summary judgment, a defendant must conclusively
negate at least one essential element of each of the plaintiff=s causes of action or conclusively
establish each element of an affirmative defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Brown v. Hearthwood II Owners
Ass=n,
201 S.W.3d 153, 159 (Tex. App.CHouston [14th Dist.] 2006, pet. denied).  A party
conclusively establishes a matter if reasonable people could not differ about
the conclusion to be drawn from the evidence.  See City of Keller v. Wilson,
168 S.W.3d 802, 816 (Tex. 2005).

We review de novo both a trial court=s grant of traditional summary
judgment and its interpretation of an unambiguous contract.  See Knott,
128 S.W.3d at 215 (regarding summary judgment); Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983) (stating, if written instrument is so worded it can
be given certain or definite legal meaning or interpretation, it is not
ambiguous and court will construe contract as matter of law).

   In reviewing a traditional summary judgment, we examine
the entire record in the light most favorable to the non-movant, indulging
every reasonable inference and resolving any doubts against the motion.  Yancy
v. United Surgical Partners Int=l, Inc., 236 S.W.3d 778, 782 (Tex. 2007). 
When a trial court=s order granting summary judgment does not specify the
grounds on which it was granted, we will affirm the judgment if any theory
advanced in the motion is meritorious.  See Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989).  Thus, to prevail on appeal, the landlords must show that
each of Aaron=s theories is meritless.  See Star‑Telegram, Inc. v. Doe,
915 S.W.2d 471, 473 (Tex. 1995).

Aaron=s summary judgment motion rested on the affirmative defenses
that the landlords had first breached the lease in two ways C by violating the quiet-enjoyment
provision and by violating the conditions-subsequent provision of the lease. 
When one party to a contract commits a material breach of that contract, the
other party is discharged or excused from further performance.  Mustang
Pipeline, Inc. v. Driver Pipeline, Inc., 134 S.W.3d 195, 196 (Tex. 2004)
(per curiam).








In Paragraph 35 of the lease, captioned AQuiet Enjoyment,@ the landlords warranted they had Agood and indefeasible fee simple
title@ to the shopping center and the
premises leased to Aaron.  Paragraph 35 also provided, ALandlord further warrants that
Tenant, subject to the terms and conditions of this Lease, will peaceably and
quietly hold and enjoy the Premises and use the Common Areas during the Term
without hindrance or interruption, so long as no Default by Tenant shall occur.@  Thus, under the plain language of
Paragraph 35, breach by the landlords occurred if Aaron could not Aenjoy the Premises . . . without
hindrance.@

The record contains the following, undisputed, summary
judgment proof: 

$       
Two letters sent
January 16, 2002, from the City of Houston to the landlords in response to the
landlords=  December 20, 2001 applications concerning the availability of city
water and waste water facilities to the shopping center;

in one letter, the City
explained there was no record of an easement connecting the landlords= property to the nearby city sanitary
sewer;

in the other letter, the
City explained the landlords= property was built over existing water line and existing
storm sewer easements, the City required documentation allowing the
encroachments, and the City stated it would issue no building permit until the
problems described in the letter were resolved;

$       
Deposition
testimony of Milton Wells, the landlords= property manager, that the matters
raised in the January 16 letters affected the landlords= entire property, as well as that of
the tenants;

$       
The deposition
testimony of Hardam S. Azad that the landlords were responsible for Aremoving@ or Adissolving@ the easement problem;

$       
The affidavit of
Willie Chandler, Aaron=s construction manager, in which he stated it was important
for Aaron to secure a building permit to allow it to finish its build-out of
the leased space, and without a permit, Aaron was unable to begin construction;








$       
The deposition
testimony of the landlords= designated expert, Neresh Dham, former Division Manager for
the Plan Review Section of the Public Works and Engineering Department, that,
until the Department was satisfied an easement existed, a building permit would
not issue, A[t]hen, depending on the building permit, the certificate of occupancy
would not issue@;

$       
The deposition
testimony of Rudolfo Moreno, an engineer in the Department of Public Works,
that generally speaking, he believed that, without a building permit, one could
not get a certificate of occupancy;

$       
Dham=s deposition testimony that, without
a certificate of occupancy, Aaron=s  occupancy of the premises was
illegal and could be terminated after thirty days= notice and failure to correct the
problem;

$       
Moreno=s and Azad=s testimony the City and landlords
did not resolve the easement issue until August, 2004; and

$       
Wells=s testimony the landlords eventually
resolved the easement matters because they were considering re-leasing locations
and knew the easement matters had to be resolved eventually if the new tenants
were to obtain building permits.

Viewing this proof in the light most favorable to the
landlords, we conclude, at a minimum, it conclusively establishes Aaron was
unable to enjoy the premises without hindrance.[4]








Despite the preceding summary judgment proof, the landlords,
on appeal, argue A[t]he pleadings and summary judgment evidence precluded the
trial court from entering summary judgment on Aaron Rents= breach of quiet enjoyment
affirmative defense.@  In their response to Aaron=s motion for summary judgment, the
landlords did not address Aaron=s affirmative defense based on the landlords= purported breach of the Aquiet enjoyment@ provision in the lease.  Instead,
the landlords focused solely on Aaron=s defense based on the landlords= purported breach of conditions
subsequent.[5]  To the
extent the landlords are now presenting an issue other than legal insufficiency
of the evidence to support summary judgment in favor of Aaron on its breach-of-quiet-enjoyment
defense, they have waived this issue.  See City of Houston v. Clear Creek
Basis Authority, 589 S.W.2d 671, 678 (Tex .1979) (AWith the exception of an attack on
the legal sufficiency of the grounds expressly raised by the movant in his
motion for summary judgment, the non‑movant must expressly present to the
trial court any reasons seeking to avoid movant=s entitlement . . . .@);  Augusta Court Co‑Owners= Ass=n v. Levin, Roth & Kasner, 971 S.W.2d 119, 122 (Tex. App.CHouston [14th Dist.] 1998, pet.
denied) (A[I]ssues a non‑movant contends avoid summary judgment that are not
expressly presented to the trial court by written answer or other written
response to the summary judgment motion are waived on appeal.@).








Additionally, in this court, the landlords have only
minimally briefed their argument that summary judgment was precluded on Aaron=s breach-of-quiet-enjoyment
affirmative defense.  The landlords= entire argument on the
quiet-enjoyment ground comprises (1) quotation of Paragraph 35 of the lease,
(2) conclusory statements there was no summary judgment proof the landlords did
not have good and indefeasible fee simple title to the shopping center or that
Aaron was not in exclusive, peaceful and quiet possession of the premises, and
(3) an assertion the summary judgment evidence indicated Aaron had exclusive,
continuous, and uninterrupted possession of the premises from the time it
accepted possession until it vacated the premises, without any claims or
demands by the landlords, City, or any third party, that it cease conducting
business or vacate the premises.[6]  Other than
case law setting forth the general standard of summary judgment review, the
landlords cite no law.  Their sole record citation comprises twenty consecutive
pages of summary judgment proof consisting of Wells=s two-page affidavit with the
attached documents.[7]  They do not
direct this court to any specific parts of that proof.

To present an issue on appeal properly, an appellant must
provide a clear and concise argument for the contentions made, with appropriate
citations to the record and authorities.  Tex. R. App. P. 38.1(i).  It is not
our responsibility to sift the record to find error or evidence in support of
an appellant=s argument.  Melendez v. Exxon Corp., 998 S.W.2d 266, 280 (Tex.
App.CHouston [14th Dist.] 1999, no pet.).

In sum, we conclude the landlords have not shown that a fact
issue exists that would defeat summary judgment on Aaron=s defensive theory of prior breach of
the promise of quiet enjoyment in Paragraph 35 of the lease; the landlords have
not shown this summary judgment ground is meritless.  We therefore affirm
summary judgment in favor of Aaron on this ground and need not address the
landlords= argument challenging summary judgment on the ground of breach of the
conditions-subsequent provision.  See Star‑Telegram, 915 S.W.2d at
473; Carr, 776 S.W.2d at 569.

Accordingly, we overrule the landlords= first issue.  As noted above, we
have overruled the landlords= second issue, directed at an earlier summary judgment
motion, as moot.[8]

 








III.  Attorney=s Fees

In issue three, the landlords argue Athe parties= lease contract precluded the trial
court from entering a judgment on attorney=s fees.@  The landlords do not dispute the
amounts awarded, but challenge the award of any attorney=s fees before rendition of a final,
nonappealable judgment.

The parties to a contract are free to adopt the standard of
their choice for recovery of attorney=s fees, and we are bound by that
choice.  See One Call Sys., Inc. v. Houston Lighting & Power, 936
S.W.2d 673, 676 (Tex. App.CHouston [14th Dist.] 1996, writ denied).  In construing the
parties= contract, we give the language its
plain and grammatical meaning unless it would defeat the parties= intentions.  Id. at 675.  In
the present case, the landlords rely on Paragraph 30 of the lease, which
provided:

Attorney=s Fees. 
In any action, suit or proceeding to enforce, defend or interpret the rights of
either Landlord or Tenant under the terms of this Lease or to collect any
amounts due Landlord or Tenant hereunder, the prevailing party,
pursuant to a final order of a court having jurisdiction over
said matter as to which applicable periods within which to appeal have
elapsed, shall be entitled to recover all reasonable costs and expenses
incurred by said prevailing party in enforcing, defending or interpreting its
rights hereunder, including, without limitation, all collector [sic] and court
costs, and reasonable attorney=s and paralegal
fees, whether incurred out of court, at trial, on appeal, or in any bankruptcy
proceeding.  (Emphasis added.)

 

The landlords argue that, pursuant to this paragraph, there
can be no Aprevailing party@ until a final court order, which is not subject to further
appeal, is in place.  Put differently, they argue an unappealable order is a
condition precedent to any party=s entitlement to, claim for, and
recovery of, attorney=s fees.  The landlords further argue Aaron was required to
prove performance of all conditions precedent and failed to do so.








Under Paragraph 30, a party is Aentitled@ to attorney=s fees if it is Athe prevailing party, pursuant to a
final order . . . [for] which applicable periods within which to appeal have
elapsed . . . .@  Even if one construes this language to mean that all
possibilities for appeal must have expired before the ultimately Aprevailing@ party may receive its attorney=s fees, there is no language in
Paragraph 30 that precludes a party from making its claim for attorney=s fees before that time or that
precludes the court from making a conditional award of those fees before
disposition of the final appeal.[9]

The court made such a conditional award in the present case. 
According to the judgment, if the landlords did not file a valid appeal from
the judgment, the award for trial attorney=s fees would become due and payable
to Aaron according to the deadlines set forth in Texas Rule of Appellate
Procedure 26.1; and, depending on whether Aaron prevailed on appeal and in any
supreme court review, attorney=s fees would become due and owing on the dates the mandate
issued from the court of appeals or the supreme court.

In short, the trial court=s award of  attorney=s fees is consistent with the
attorney=s fees provision in the lease. 
Accordingly, we overrule the landlords= third issue.

IV.  Conclusion

Having overruled the landlords= three issues, we affirm the judgment
of the trial court.

 

 

/s/        Charles W. Seymore

Justice

 

Panel consists of Chief Justice Hedges and Justices
Anderson and Seymore.









[1]  Wells was unsure whether he spoke with Rodolfo
Moreno in the Public Works Department or to someone else.





[2]  In an initial order granting Aaron=s motion for summary judgment, the trial court stated
the landlords had not filed a response.  The landlords filed a motion for new
trial, and the trial court granted the motion and subsequently entered a second
order granting Aaron=s motion.





[3]  Aaron asserted these latter two grounds in its May
2005 motion for summary judgment.  Both parties agree the trial court denied
the May 2005 summary judgment motion and that Aaron did not repeat the May 2005
grounds in its second summary judgment motion.  Accordingly, we overrule issue
two as moot.





[4]  We take no position on whether the lack of a sewer
easement and encroachments on water and storm sewer easements constituted a
defect in the landlords= title.





[5]  The landlords attached and incorporated by reference
their response to Aaron=s May 2005 motion for summary judgment.  In that
response, the landlords addressed Aaron=s
defense that the landlords had breached the lease by not providing a
certificate of occupancy.  That defensive ground is not the same as Aaron=s 2006 ground based on the landlords having not
resolved the easement problems, a breach that led to Aaron=s inability to obtain a certificate of occupancy.





[6]  This third component of the landlords= argument appears to raise an issue other than a Ano evidence@
issue.





[7]  The landlords filed the affidavit and documents with
their response to Aaron=s May 2, 2005 motion for summary judgment, and Wells=s statements in the affidavit are responsive to the
grounds raised in the May 2, 2005 motion.  See note 3, supra.





[8]  See note 3, supra.





[9]  The landlords= interpretation
of Paragraph 30 would result in the necessity of a second lawsuit for the
prevailing party in the contract suit to recover its attorney=s fees for the contract suit.  Such  piecemeal
litigation is generally disfavored.  See Fid. Mut. Life Ins. Co. v. Kaminsky,
820 S.W.2d 878, 882 (Tex. App.CTexarkana 1991,
writ denied) (stating (1) for policy purposes, allowing separate suit for
attorney=s fees arising out of a transaction encourages
multiplicity of suits and delays in litigation, and (2) facts and complexity of
suit is before court at time of initial action, and neither judicial economy
nor litigants= and counsels=
time is well served by allowing separate suits).