**Opinion issued May 15, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00210-CV

———————————

**COLONY FLOORING & DESIGN, INC., Appellant**

**V.**

**REGIONS BANK, Appellee**

---

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2011-42183

---

## MEMORANDUM OPINION

Appellant Colony Flooring & Design, Inc. appeals the trial court's summary judgment in favor of appellee's Regions Bank on its suit to collect a debt. Because we conclude that Colony Flooring raised a fact issue about the amount owed, we reverse and remand.

## BACKGROUND

### A. The Contract between Colony Flooring and Stone Pavilion

Nonparty Stone Pavilion imported and sold natural stone products (such as granite and marble) and related items for use in residential and commercial construction projects. Stone Pavilion operated with a business line of credit from appellee Regions Bank.

On June 17, 2009, Stone Pavilion executed a Promissory Note in the amount of $ 2,450,000 pursuant to an asset-based Business Loan Agreement, which was executed the same day. This note was, in turn, secured by a Commercial Security Agreement, executed by Stone Pavilion in favor of Regions, in which Regions took a security interest in Stone Pavilion's inventory and accounts receivable, as well as proceeds thereof. Regions's security interest was perfected by filing the appropriate UCC statements with the Office of the Secretary of the State.

Around February 9, 2010, Stone Pavilion defaulted, and Regions served on Stone Pavilions a notice of default, intent to accelerate, and a reservation of rights. On May 7, 2010, Stone Pavilion abandoned its business premises and surrendered to Regions certain collateral, including its accounts receivables, in partial satisfaction of its more than $2,300,000 owed to Regions.

The Commercial Security Agreement permits Regions to undertake certain collection actions in Stone Pavilion's name or in its own name.

2

[Regions] may collect the payments, rents, income and revenues from the collateral . . . , receive the payments, rents, income, and revenues therefrom and hold the same as security for the indebtedness or apply it to payment of the indebtedness in such order of preference as [Regions] may determine. Insofar as the collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, [Regions] may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the collateral as [Regions] may determine, whether or not indebtedness or collateral is then due.

## B. Regions's lawsuit against Colony Flooring

Appellant Colony Flooring was one of Stone Pavilion's customers. On June 23, 2010, Regions's counsel sent a letter to Colony Flooring to notify it about Regions first priority security interest in Stone Pavilion's receivable and requesting payment of $16,124.73 in outstanding invoices. Colony Flooring did not respond.

Regions sued, seeking payment of $23,084.64 in unpaid invoices that Colony Flooring owed to Stone Pavilion, as well as attorneys' fees under Chapter 38 of the Texas Civil Practice & Remedies Code.

Colony Flooring's answer, among other things, denied that Regions has standing and argued that Stone Pavilion was a necessary party to the suit. Colony Flooring also attached a sworn verification by its President averring, "Plaintiff's alleged account, if any, and each and every item thereof, are not just or true; and all just and lawful offsets, adjustments, payments and credits have not been allowed."

### 1.    The Summary Judgment proceedings

Regions filed a motion for summary judgment, contending that, as a matter of law, it has "contractual and statutory rights to collect Stone Pavilion's receivables." It cited the Commercial Security Agreement's provisions allowing it to collect debts owed to Stone Pavilion, as well as section 9.607 of the Texas Business & Commercial Code, which authorizes a secured party to "enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral."

As summary-judgment evidence, it attached (1) the Note, (2) Commercial Loan Agreement, (3) Commercial Security Agreement, (4) UCC Statement filings, (5) 145 pages of sales and outstanding receivable documentation (i.e., purchase orders, invoices, sales orders and purchase orders), (6) Regions's demand letter to Colony Flooring, and (7) an attorneys' fee affidavit. Regions contended that the evidence proved its entitlement to judgment as a matter of law on two theories: Stated Account and Open Account.

Colony Flooring responded, arguing that Regions "did not satisfy its burden under Texas Rule of Civil Procedure 166a(c)." Specifically, Colony Flooring

argues Regions did not conclusively prove that "there is a just debt owed on the account." Colony Flooring's response did not dispute the accuracy of the invoices relied upon by Regions; nor did it dispute that it has not paid the amounts reflected by those invoices. Rather, it argued that two affidavits attached to its summary judgment response "clearly show there is a dispute as to whether there is indeed a debt at all."

The first affidavit is by Hassan Kaivani, Colony Flooring's President. It avers that Kaivani was "responsible for the account with Stone Pavilion" and that "Francois Ahmadi was the person I worked with." The remainder of the affidavit, in its entirety, states:

> [Ahmadi] has presented me with a letter acknowledging credits for our account. In addition, we dispute the accounts presented to use by Regions Bank. They failed to give credit and offsets for the materials that were defective or returned. Based upon my calculations, Stone Pavilion owes my company $29,166.95."

Neither the summary judgment response, nor this attached affidavit, provides details identifying "the materials that were defective or returned" or explaining Kaivani's calculations.

The second affidavit is by Francois Ahmadi. It states, in its entirety,

> I am the Agent for Stone Pavilion that handled the accounts for Colony Flooring & Design. On May 2, 2012, I signed a document acknowledging an agreement with Colony Flooring & Design, LLC, which represents reimbursements owed to Colony due to defects and other problems we resolved as a result products we delivered to them (See Exhibit "A" attached). Each of the invoices referenced in that

letter are true and correct. Based upon my representation to these parties, they were under no further obligation for the amounts stated in this document in the amount of $29,166.96.

The referenced May 2, 2012 letter, attached as Exhibit A is on Colony Flooring and Design letterhead, is addressed to Ahmadi from Kaivani, but Ahmadi also signed the letter at the bottom. The letter states:

> I am writing this letter to remind you of our agreements about Stone Pavilion's claimed invoices being null, due to the following reasons:
>
> 1) We Purchased 18x18 Travertine From Stone Pavilion and Installed in Mrs. Sangeeta Khorana's House. Material was defected [sic] and you visited the job site and Agree[d] to replace the Travertine and pay for all the Labor & Material cost as 1600 sft 18 x 18 travertine plus,

| | |
|---|---|
| * Labor to Move all Furniture, Drapes appliance | $600.00 |
| * Remove & Haul off Travertine | $3200.00 |
| * Labor to Install Travertine | $4800.00 |
| * Seal the New Travertine | $800.00 |
| * Material as your Invoice # 22677 | $5136.98 |
| Total Claim | $13736.98 |

> 2) Stone Pavilion invoice #33743, 2126.25 sft [o]f marble with a total amount of $10629.97 which we already discussed about. The marble was not right on calibration; we sent it to the job site and then returned to Stone Pavilion. We paid $1800.00.
>
> 3) We returned few slabs to Stone Pavilion because of bows and cracks and being off standard, and were supposed to receive a credit of approximately $3000.00.

6

**STANDARD OF REVIEW**

We review the trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under Texas law, the party moving for a traditional summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense. *M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 23.

Once the movant produces sufficient evidence conclusively establishing his right to summary judgment, the burden of proof shifts to the nonmovant to present evidence sufficient to raise a fact issue. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). In reviewing a traditional summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex. 2007).

Conclusory statements in an affidavit unsupported by facts are insufficient to support or defeat summary judgment. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). A conclusory statement is one that does not provide the underlying facts to support the conclusion and cannot be readily controverted.

7

*Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991); *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ); *see also Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) (holding that witness's affidavit is conclusory if it fails to explain basis of witness's statements to link his conclusions to facts).

## APPLICABLE LAW

"A party is entitled to relief under a claim for account stated when (1) transactions between the parties give rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties fixes an amount due; and (3) the one to be charged makes a promise, express or implied, to pay the indebtedness." *Schwartzott v. Maravilla Owners Ass'n, Inc.*, 390 S.W3d 15, 19 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). "The elements of an open account are: (1) transactions between the parties, (2) creating a creditor-debtor relationship through the general course of dealing, (3) with the account still being open, and (4) with the expectation of further dealing." *Capital One Bank (USA), N.A. v. Conti*, 345 S.W.3d 490, 491 (Tex. App.—San Antonio 2011, no pet.).

## ANALYSIS

The only aspect of Regions's claims Colony Flooring challenges is the amount due. Specifically, Colony Flooring contends that its summary-judgment response and attached evidence calls into question whether all appropriate credits

and offsets have been applied to its account in calculating the amount due. Regions disagrees, arguing that Colony Flooring failed to meet its burden to raise a fact issue by competent summary judgment evidence. Specifically, Regions contends that (1) Kaivani's affidavit is impermissibly conclusory and omits requisite supporting factual allegations, (2) Ahmadi's affidavit is incompetent and conclusory because it did not establish that Ahmadi was an authorized agent of Stone Pavilions, and because it did not provide sufficient detail about the alleged credits/offsets, and (3) the May 2, 2012 letter is incompetent because it is dated after the lawsuit and no evidence supports Ahmadi's authority to bind Stone Pavilion. Because we agree with Colony Flooring that its evidence raised a fact issue in response to Regions's motion for summary judgment, we reverse the trial court's summary judgment.

Regions acknowledges that Colony Floor proffered summary-judgment evidence in support of its argument that Regions's claim did not take into account credits and offsets, but urges us to disregard that evidence. First it challenges Ahmadi's statement that he is "the Agent for Stone Pavilion that handled the accounts for Colony Flooring & Design." Regions argues that "[a]gency is never presumed; it must be shown affirmatively, and the party who asserts the existence of an agency relationship bears the burden of proving it." Because there is "no description of Ahmadi's job title or duties" or "evidence or description of

9

purported authority" Regions argues that the legal conclusion that Ahmadi was an "agent" is not competent summary judgment evidence.

Although Ahmadi's affidavit states he was Stone Pavilion's "agent", whether Colony Flooring raised a fact issue as to credits or offsets does not depend upon a particular agency designation. His affidavit goes on to state that he "handled the accounts for Colony Flooring & Design." Kaivani's affidavit likewise represents that Ahmadi was the person at Stone Pavilion he worked with on Colony Flooring accounts, and many of the Stone Pavilion/Colony Flooring invoices Regions proffered as summary-judgment evidence list Ahmadi as the representative. While the word "agent" in isolation may be conclusory, all of this evidence, taken together, establishes a basis for his personal knowledge and his position as one of the Stone Pavilion sales representatives working on Colony Flooring account, as well as his personal knowledge of the allegedly unaccounted for offsets and credits. *Valenzuela v. State & County Mut. Fire Ins. Co*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("An affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts.").

Similarly, Regions complains about Ahmadi's statement that "based on my representations to these parties, they were under no further obligation for the amounts stated in this document in the amount of $29,166.95." Regions argues

that "no obligation" amounts to a legal conclusion, rendering Ahmadi's affidavit incompetent summary-judgment evidence. But, again, the rest of the affidavit and the attached exhibit contain factual representations in support. Ahmadi's affidavit states that the attached exhibits "represent[] reimbursements owned to Colony due to defects and other problems we resolved as a result of products we delivered to them." The attached letter identifies a specific job site and the specific invoices that were the subject of returns and agreements for credits, as well as specific amounts and details supporting the alleged credits due. Whether these are legitimate returns, credits, and offsets remains to be proven, but the evidence is specific enough to survive a challenge that the evidence is impermissibly conclusory.[1]

Regions relies primarily on *Keenan v. Gibraltar Savings Association*, 754 S.W.2d 392 (Tex. App.—Houston [14th Dist.] 1988, no writ) and *Stucki v Noble*, 963 S.W.2d 776 (Tex. App.—San Antonio 1998, pet. denied) in support of its argument that Colony Flooring's evidence is insufficient to raise a fact issue. These two cases are distinguishable, however, because Colony Flooring's evidence is more detailed and specific than was presented in those cases.

---

[1] Relatedly, Regions argues that Ahmadi's affidavit did not establish his ability to bind Stone Pavilion when he signed the May 2, 2012 letter. But the letter does not purport to grant new offsets and credits; rather, its stated purpose is to memorialize prior agreements from the time period he worked as a representative for Stone Pavilion.

11

In *Keenan*, in response to a bank's motion for summary judgment to collect on a guarantor agreement, the defendant responded with the allegation that the bank "had failed to allow 'all just and lawful offsets, payments, and credits.'" 754 S.W.2d at 393. The court held this allegation would not defeat summary judgment because "a party who opposes a summary judgment by asserting an affirmative defense of offset, payment, or credit, must offer competent summary judgment proof to support its allegations." *Id.* Because the defendant in that case "offered no supporting factual allegations concerning specific offset amounts, specific credits, or specific instances of payment," the court concluded that it "raised only legal conclusions, which do not constitute competent summary judgment proof." *Id.* at 394 (citing *Life Ins. Co. of Virginia v. Gar–Dal, Inc.*, 570 S.W.2d 378, 381–82 (Tex. 1978)).

In *Stucki*, in response to a landlord's motion for summary judgment to collect under a commercial lease and promissory note, the lessee argued he was entitled to credit for payments made and provided copies of checks purportedly authenticated by his lawyer. 963 S.W.2d at 781. Because the lawyer's affidavit did not establish personal knowledge, and because the summary-judgment evidence did not establish that the checks to the landlord were negotiated or that they were in satisfaction of the debt sued upon, the court held that the lessee did not raise a fact issue on the amount due. *Id.* at 781–82.

12

The evidence provided by Colony Flooring in this case is more specific than that found insufficient in *Keenan* and *Stucki*. Colony Flooring's evidence, taken as a whole, raises a fact issue about the amount due to Regions by providing specific factual details about credits and offsets allegedly due.

## CONCLUSION

Because Colony Flooring raised a fact issue in its summary-judgment response, we reverse the trial court's summary judgment and remand for further proceedings.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.