**Eula YANCY, as Guardian of the Person and the Estate of Carletha Yates, an Incapacitated Adult, Petitioner,**

v.

**UNITED SURGICAL PARTNERS INTERNATIONAL, INC., Valley View Surgical Center, Inc., and Judith Smith, R.N., Respondents.**

No. 05–0925.

Supreme Court of Texas.

Argued Feb. 14, 2007.

Decided Oct. 19, 2007.

---

Bryce J. Denny, Seabaugh, Benson, Keene & Denny, Shreveport, LA, for Petitioner.

Walter A. Herring, O. Rey Rodriguez, Fulbright & Jaworski L.L.P., Vernon L. Krueger, David M. Walsh IV, Chamblee & Ryan, P.C., Dallas, TX, for Respondents.

Chief Justice JEFFERSON delivered the opinion of the Court.

We must decide whether the two-year statute of limitations found in former article 4590i, section 10.01 of the Texas Revised Civil Statutes[1], violates the Texas Constitution's open courts guarantee as applied to an incapacitated plaintiff whose guardian timely filed suit against some defendants but not others. We conclude, contrary to the court of appeals, that the plaintiff presented competent summary judgment evidence of her continuous mental incapacity but nonetheless hold that the open courts guarantee has not been violated here.

## I

### Background

On May 3, 2000, Carletha Yates underwent a lithrotripsy—a surgical procedure to remove kidney stones—at Valley View Surgical Center. During the procedure, Yates suffered a cardiac arrest—allegedly caused by the medical personnel's failure to monitor her oxygen while she was under general anesthesia—and is now comatose. On December 10, 2001, Eula Yancy, Yates's mother and guardian of her estate and person, sued Manuel Ramirez, M.D. and Dallas Pain & Anesthesia Associates for negligence. Almost two years later, on September 2, 2003, Yancy added United

Surgical Partners International, Inc.[2] (United Surgical), Valley View Surgical Center, Inc., and Judith Smith, R.N., (collectively, Valley View) as defendants.

United Surgical and Valley View asserted that limitations barred Yates's claims, and they moved for summary judgment on that basis. In response, Yancy conceded that she filed Yates's claims outside of the two-year statute of limitations but contended that because Yates has "been continuously in a vegetative, comatose state since May 3, 2000 ... limitations ... has been tolled and any statutory attempt to void the tolling violates the Texas Open Courts provisions." Yancy attached two affidavits to the summary-judgment response. Anaise "Sis" Theuerkauf, a "certified rehabilitation registered nurse, certified case manager, and life care planner," testified that she visited and assessed Yates at her home and reviewed her medical records. Theuerkauf concluded:

> It is my opinion based upon personal observations, assessment, interviews and review of her medical records and diagnoses of her treating physicians that Carletha Yates is in a comatose, vegetative state, and, based on my review of her medical records, she has been in such a condition consistently and uninterrupted since her anoxic brain injury suffered on May 3, 2000, while a patient at Valley View Surgery [sic] Center. She has been totally disabled continuously since May 3, 2000.

Yancy also filed an affidavit and accompanying report from Cindy Sacker, a registered nurse. Sacker's report noted that

---

1. Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 10.01, 1977 Tex. Gen. Laws 2039, 2052, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at TEX. CIV. PRAC. & REM CODE § 74.251). The prior law continues in effect for cases like this one, filed before the new Act's September 1, 2003 effec-

tive date. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 899.

2. Yancy alleged that United Surgical owned and operated Valley View Surgical Center, where Yates's lithrotripsy was performed.

the monitor record from Yates's surgery reflected a ten-minute period during which Yates had "no respirations," leading Sacker to conclude that Valley View's nursing staff breached its duty of care and "[a]s a result ... Yates, has suffered a catastrophic, irreversible, brain injury, rendering her comatose and totally unresponsive, requiring her family to assume responsibility for her care."

Yancy also attached the 137–page deposition transcript of Dr. Manuel Ramirez, the anesthesiologist who attended Yates during the lithrotripsy. Based on his review of the records, Dr. Ramirez testified that near the end of the procedure, Yates's blood-oxygen levels dropped, and she developed "brady [and] asystole." Ultimately, Yates suffered a cardiac arrest, requiring cardiopulmonary resuscitation. Dr. Ramirez intubated Yates and administered epinephrin. Yates's vital signs returned and, accompanied by Dr. Ramirez, she was transferred to Medical City Dallas. Dr. Ramirez recalled speaking with Yancy that day and explaining that Yates had suffered a cardiac arrest, had been resuscitated and had demonstrated good vital signs on transfer, but remained unconscious. While Dr. Ramirez had not seen Yates since the transfer, he had no reason to believe her condition had changed.

On the day of the summary judgment hearing, Valley View challenged Yancy's summary judgment evidence, asserting that Theuerkauf's affidavit testimony was vague, ambiguous, misleading, and conclusory, and that Sacker's testimony was uncorroborated. United Surgical did not object to Yancy's proof. The trial court granted the motions.[3] Yancy settled with and dismissed Ramirez and the Dallas Pain & Anesthesia Associates from the suit, making the summary judgments final.

Yancy appealed, and the court of appeals affirmed. 170 S.W.3d 185. The court examined the summary judgment evidence and objections and concluded that, because the objections raised matters of substance, not form, "the failure to obtain a ruling did not waive the objections" because "[o]bjections to the substance of an affidavit may be raised for the first time on appeal." *Id.* at 191. The court held that both affidavits were conclusory, and that neither Theuerkauf nor Sacker were qualified to testify to Yates's medical condition. The court did not mention Dr. Ramirez's testimony nor any other summary judgment evidence. The court of appeals affirmed, holding that Yancy failed to present competent evidence of Yates's alleged continuous mental incapacity and, therefore, failed to raise a fact issue about the constitutionality of the statute of limitations for health care liability claims as applied to her. *Id.* at 192–93. We granted Yancy's petition for review. 50 Tex. Sup.Ct. J. 65 (Oct. 27, 2006).

## II

### Summary Judgment Burden of Proof

■ Yancy argues that, as the movants, the respondents bore the burden of conclusively negating an open courts violation, and that because their motions did not address the open courts provision, they failed to meet their burden. To support her position, she relies on authority requiring a defendant to negate the discovery rule as a matter of law once the plaintiff has pleaded it. *See Pustejovsky v. Rapid–American Corp.*, 35 S.W.3d 643, 646 (Tex. 2000); *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997).

We confronted this very question in *Shah v. Moss*, 67 S.W.3d 836, 846–47 (Tex. 2001). In that case Moss sued Shah for

---

**3.** The trial court's order was silent on the    objections.

medical negligence, and Shah moved for summary judgment based on section 10.01's limitations provision. *Id.* at 839. Moss countered that section 10.01 violated the open courts guarantee. *Id.* at 841. We said, "it was Moss's burden to raise a fact issue demonstrating that . . . the open courts guarantee applies." *Id.* at 846–47. Unlike the discovery rule, which a defendant must negate once the plaintiff has pleaded it, a plaintiff who asserts that the open courts provision defeats limitations bears the burden of raising a fact issue. *See also Brown v. Shores,* 77 S.W.3d 884, 888–89 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (Brister, C.J., concurring).

Thus, Yancy had the burden to present evidence of Yates's continuous mental incapacity. *See Tinkle v. Henderson,* 730 S.W.2d 163, 167 (Tex.App.-Tyler 1987, writ ref'd). The court of appeals held that Yancy failed to provide competent summary judgment evidence regarding Yates's mental capacity and, therefore, failed to meet that burden. 170 S.W.3d at 192–93. We disagree.

■ When reviewing a summary judgment, we "must examine the *entire record* in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson,* 168 S.W.3d 802, 824–25 (Tex.2005) (emphasis added). Here, the evidence included not only the two affidavits discussed by the court of appeals, but the anesthesiologist's deposition testimony and Yates's medical records.[4] Theuerkauf averred that she "personally visited and assessed Carletha Yates in her home," and it was her opinion "based upon personal observations, assessment, interviews and review of her medical records and diagnoses of her treating physicians that Carletha Yates is in a comatose, vegetative state, and, based on [her] review of [Yates's] medical records, she has been in such a condition consistently and uninterrupted since . . . May 3, 2000."

The court of appeals concluded that the affidavit was not competent evidence because Theurkauf did not show herself qualified to render an opinion on Yates's medical diagnosis, and Theurkauf's statement that Yates had been in a "comatose, vegetative state" consistently since her surgery was "wholly conclusory in nature." 170 S.W.3d at 191–92. Theuerkauf's qualifications consisted of a statement that she is "a certified rehabilitation registered nurse, certified case manager, and life care planner who has been duly licensed in nursing in Louisiana, Texas, Mississippi, Arkansas, Alabama, and Tennessee." Even assuming that she was not qualified as an expert, she was still free to offer testimony of her personal observations. The lower court recognized that Theuerkauf, a registered nurse, would have been competent to testify that "the plaintiff was unresponsive, uncommunicative, and incapable of caring for herself."[5] 170 S.W.3d at 192. We see no meaningful distinction between that de-

---

4. We assume, without deciding, that the court of appeals correctly concluded that the objections raised matters of substance, not form, and, therefore, that the failure to obtain an explicit ruling from the trial court did not waive the objections.

5. *See* Tex.R. Evid. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the

witness. . . ."); *see also Lee v. Lee,* 424 S.W.2d 609, 611 (Tex.1968) (holding that where there was "no direct testimony in the record of acts, demeanor or condition indicating that testator lacked testamentary capacity on [a certain date], testator's mental condition on that date may be determined from lay opinion testimony based upon the witnesses' observations of testator's conduct either prior or subsequent to the execution").

scription and Theuerkauf's actual testimony that Yates was "comatose" and in a "vegetative state." Theuerkauf's affidavit supports an inference that Yates is currently mentally incapacitated.

Also included in the summary judgment evidence were Valley View's medical records of Yates's lithrotripsy procedure. Those records show that, during surgery, Yates suffered a cardiac arrest during which her blood-oxygen levels dropped, necessitating cardiopulmonary resuscitation. Sacker's affidavit describes a ten-minute period during which Yates had "no respirations." The records further reflect that when Yates was transferred from the surgery center by ambulance she was "unresponsive," with pupils fixed and dilated. Dr. Ramirez, who rode with Yates during the transfer to Medical City, testified that Yates had not regained consciousness when he last saw her and that it was his understanding she was "incapacitated." While these facts alone may not absolutely exclude the possibility that Yates regained consciousness after she was transferred from the surgery center, her current comatose condition supports a reasonable inference that she never recovered. The affidavits, taken in conjunction with the medical records and Dr. Ramirez's testimony, raise a fact issue as to whether Yates has been continuously mentally incapacitated since the surgery, and the court of appeals erred in concluding otherwise.

## III

### The Open Courts Guarantee

#### A

#### Applicable Law

The Texas Constitution's open courts guarantee provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. This provision assures that a person bringing a well-established common-law cause of action will not suffer unreasonable or arbitrary denial of access to the courts. *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex.1996). "[I]t is, quite plainly, a due process guarantee." *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983); *Hanks v. City of Port Arthur*, 121 Tex. 202, 48 S.W.2d 944, 946–48 (1932).

■ A statute has the effect of denying access to the courts if it unreasonably abridges a plaintiff's right to obtain redress for injuries caused by the wrongful acts of another. *Sax*, 648 S.W.2d at 665. Proof of an open courts violation requires two elements: (1) a cognizable, common-law claim that is statutorily restricted, and (2) the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis. *Shah*, 67 S.W.3d at 842; *Jennings*, 917 S.W.2d at 793; *Sax*, 648 S.W.2d at 665–66.

#### B

#### The Parties' Arguments

Yancy contends that the Medical Liability Insurance Improvement Act's (MLIIA) limitations provision violates the open courts guarantee as applied to Yates. The statute at issue prescribes a two-year limit in which to file medical malpractice claims and prohibits tolling based on minority or incapacity; it provides:

> *Notwithstanding any other law,* no healthcare liability claim may be commenced unless the action is filed within two-years from the occurrence of the breach or tort or from the date the medical or healthcare treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 shall have until their 14th

birthday in which to file, or have filed on their behalf, the claim. *Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.*

Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 10.01, 1977 Tex. Gen. Laws 2039, 2052 (repealed 2003) (emphasis added). Yancy's argument is precise: this Court has already held that section 10.01 violates the open courts guarantee as applied to minors, *see Weiner v. Wasson*, 900 S.W.2d 316 (Tex.1995), and there is no rational basis for allowing a plaintiff's minority but not her mental incapacity to toll limitations for a health care liability claim. United Surgical and Valley View contend, however, that Yancy cannot establish either element of an open courts claim. We conclude that the open courts guarantee is not violated as applied to Yates.

## C

### Analysis

■ In *Ruiz v. Conoco, Inc.,* we acknowledged that "the mere commencement of a lawsuit by, or on behalf of, a legally incapacitated individual is, considered alone, insufficient to deny the protection of [the Civil Practice and Remedies Code's] tolling provision." *Ruiz,* 868 S.W.2d 752, 756 (Tex.1994). *Ruiz,* however, did not involve an open courts challenge, but rather the statutory tolling provision applicable to persons who were legally disabled. *See* TEX. CIV. PRAC. & REM.CODE § 16.001. We observed "[t]he tolling statute reflects a considered legislative judgment that in enumerated circumstances the strong policy in favor of prompt disposition of disputes must give way to the need to protect a plaintiff who is unable to protect himself or herself." *Ruiz,* 868 S.W.2d at 756. But section 10.01 expressly makes the tolling statute inapplicable to health care liability claims,

Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 10.01, 1977 Tex. Gen. Laws 2039, 2052 (repealed 2003) (applying two-year statute of limitations "[n]otwithstanding any other law" and stating that subchapter "applies to all persons regardless of minority or other legal disability"), reflecting a considered legislative judgment in favor of the prompt resolution of such claims.

Instead, Yancy's claim is based on the open courts guarantee, which is premised on the notion that "the Legislature has no power to make a remedy by due course of law contingent on an impossible condition." *Morrison v. Chan,* 699 S.W.2d 205, 207 (Tex.1985). This guarantee differs from tolling provisions. Unlike the discovery rule, which defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the claim, *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex.1998), the open courts provision merely gives litigants a reasonable time to discover their injuries and file suit, *Hall v. Dow Corning Corp.,* 114 F.3d 73, 77 (5th Cir.1997) (applying Texas law). Because the open courts guarantee does not toll limitations, courts must determine what constitutes a reasonable time for a claimant to discover her injuries and file suit. *Hall,* 114 F.3d at 77.

Once again, *Shah v. Moss* is instructive. There, we considered whether applying section 10.01 to the plaintiff's health care liability claim, allegedly resulting from a negligent course of treatment, would violate the open courts guarantee. *Shah,* 67 S.W.3d at 846–47. Moss sued Dr. Shah, alleging that his medical negligence ultimately caused Moss's loss of sight in his right eye. *Id.* at 839. Dr. Shah moved for summary judgment, claiming section 10.01's two-year statute of limitations

barred Moss's claims, which were filed more than two years after Dr. Shah performed surgery on Moss's eye. *Id.* The trial court granted Dr. Shah's motion, and Moss appealed. *Id.* at 840. The court of appeals reversed, and we granted Dr. Shah's petition for review.

Moss argued, among other things, that applying section 10.01 to bar his claims violated the open courts provision. *Id.* at 841. We rejected that proposition:

> ... [E]ven if we take as true Moss's assertion that he could not have sued within the two-year limitations period because he did not discover Dr. Shah's negligence until his last office visit in July 1995, the open courts provision does not save Moss's claims. *A plaintiff may not obtain relief under the open courts provision if he does not use due diligence and sue within a reasonable time after learning about the alleged wrong.*
>
> Here, the summary-judgment evidence shows Moss knew about his alleged injury, the second detached retina resulting in Moss's loss of sight, at least seventeen months before he brought suit. Moss offers no explanation, other than Dr. Shah's alleged fraudulent concealment, about why he delayed in bringing suit. And, we have already rejected Moss's fraudulent-concealment claim. Accordingly, we conclude that, as a matter of law, Moss did not file suit within a reasonable time after discovery his injury.
>
> Moss did not raise a fact issue establishing that he did not have a reasonable opportunity to discover the alleged wrong and bring suit within the limitations period or that he sued within a reasonable time after discovering the alleged wrong. Thus, the open courts provision does not apply to save Moss's time-barred negligence claims.

*Id.* at 847 (citations omitted) (emphasis added).

Such is the case here. The allegedly negligent treatment occurred on a single day—May 3, 2000—the date of Yates's lithrotripsy at Valley View. Yancy's original petition, filed some nineteen months later, "specifically reserve[d] the right to obtain discovery to obtain more information regarding the procedure in question and the events which transpired on May 3, 2000 and to thereafter name additional persons or entities as Defendants based on future discovery."

Yancy has offered no explanation for failing to name Valley View and United Surgical for almost twenty-two months after filing the original petition. The record does not establish when Yancy was appointed Yates's guardian nor when Yancy retained a lawyer, but neither event was later than December 10, 2001, the day Yancy, on Yates's behalf, filed suit against Dr. Ramirez and Dallas Pain and Anesthesia. The summary judgment evidence demonstrates that Dr. Ramirez spoke with Yancy on May 3, 2000 and informed her of Yates's post-surgery condition. If, as Yancy alleges, Yates has been continuously incapacitated since that time, Yancy knew of her condition and retained a lawyer well within the limitations period. On this record, there is no fact issue establishing that Yancy (on Yates's behalf) did not have a reasonable opportunity to discover the alleged wrong and bring suit within the limitations period or that she sued within a reasonable time after discovering the alleged wrong. Thus, the open courts provision does not save Yates's time-barred negligence claims. *Shah,* 67 S.W.3d at 847.

In *Tinkle v. Henderson,* 730 S.W.2d 163,

167 (Tex.App.-Tyler 1987, writ ref'd),[6] the court recognized that requiring an incapacitated plaintiff to comply with the Tort Claims Act's notice provision would "require an impossible thing" and violate the due process guarantees of the Texas Constitution. Here, requiring Yates to comply with section 10.01's limitations period does not "require an impossible thing"; she had a guardian, retained a lawyer, and filed suit, all within the applicable period. That Yancy chose, for unknown reasons, to sue some defendants but not others does not raise due process concerns. Because section 10.01 is constitutional as applied to Yates, there is no need to strike it down because it might operate unconstitutionally in another case. *See Morrison v. Chan,* 699 S.W.2d 205, 207 (Tex.1985).

## IV

### Conclusion

We affirm the court of appeals' judgment. TEX.R.APP. P. 60.2(a).

---

**6.** *Tinkle* has the weight of our own precedent. *See Hyundai Motor Co. v. Vasquez,* 189 S.W.3d 743, 754 n. 52 (Tex.2006)(citing TEXAS RULES OF FORM (Texas Law Review Ass'n et al. eds., 10th ed.2005) (In cases decided after 1927, "writ refused" denotes that the "[j]udgment of the court of civil appeals is correct," with "[s]uch cases hav[ing] equal precedential value with the Texas Supreme Court's own opinions.")).