# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00423-CV
NO. 03-10-00433-CV
NO. 03-10-00497-CV

**Bruce R. Hotze and Paul Bettencourt, Appellants**

**v.**

**City of Houston, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GN-10-001296, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

## O P I N I O N

This appeal arises from an expedited declaratory judgment action instituted by the City of Houston to validate an ordinance raising the City's water and wastewater service rates. Appellants Bruce R. Hotze and Paul Bettencourt (collectively "Intervenors") appeal from the district court's judgment upholding the validity of the City's ordinance and from the district court's post-trial orders requiring Intervenors to post a security bond and dismissing them from the case for failure to post the security bond. In three issues challenging the district court's security-bond orders, Intervenors assert that the district court erred because (1) the Expedited Declaratory Judgment Act, Tex. Gov't Code Ann. §§ 1205.001-.152 (West 2000) ("EDJA"), security-bond provisions apply only to proceedings before the district court; (2) the EDJA's security-bond provisions violate the open courts doctrine of the

Texas Constitution; and (3) the evidence is insufficient to support the amount of the bond set by the district court. In three additional issues, Intervenors assert that the district court erred in rendering judgment for the City because the EDJA is unconstitutional, the evidence was insufficient to support the City's water and wastewater rate increases, and the City passed the rate-increase ordinance without first holding an election required by city charter. Based on our holdings that the EDJA is not unconstitutional and that the district court was required under the EDJA to order Intervenors to post a security bond, we will affirm the district court's orders setting the security bond and dismissing Intervenors from the case for failure to post the security bond. Because Intervenors failed to post the security bond as required by the EDJA, we lack jurisdiction to consider Intervenors' substantive claims regarding the validity and legality of the City's rate increases, and thus we will dismiss the remainder of Intervenors' issues for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2010, after determining that the City's water and wastewater utility system lacked sufficient operational revenue to pay its projected costs of service for 2011 and to satisfy certain of its previously incurred bond obligations, the City adopted an ordinance increasing and adjusting the utility system's water and wastewater rates ("2010 ordinance"). Shortly after adopting the 2010 ordinance, the City filed this suit in Travis County, seeking declarations that the City (1) had legally adopted and could implement the 2010 ordinance's rate increases without voter approval, and (2) could legally adjust the rates in the future as provided by the 2010 ordinance.

2

Hotze and Bettencourt intervened in the case as interested parties, asserting that the district court should deny the City's request for declaratory judgment because the 2010 ordinance violated two City charter amendments relating to limits on utility rate increases and combined city revenues.[1]  After a bench trial on the merits, the district court rendered judgment that the City had legally adopted the increases and adjustments in rates set forth in the 2010 ordinance and that the City could legally implement the rate increases.

The City had filed a pretrial motion with the district court seeking an order requiring Intervenors to post a security bond to cover any damages or costs that the City might incur due to delay from Intervenors' continuing opposition in this case.  When the district court heard the City's motion for security bond two weeks after trial, the City presented evidence that it would incur damages ranging from $14 million to $28 million if Intervenors appealed the district court's judgment, depending on the length of the appeal.  The potential damages alleged by the City included its inability to issue new bonds and its costs and expenses resulting from inflation, contract re-bidding, sewage overflows, and purchasing the extra electricity and chemicals required to operate its old equipment.  Intervenors did not challenge the City's damage evidence, but instead argued that they could not afford to post any bond amount in excess of $100.  The district court granted the City's motion, set the security bond at $1 million,

---

[1]  The Houston Court of Appeals discusses these amendments in detail in *White v. Robinson*, 260 S.W.3d 463, 466 (Tex. App.—Houston [14th Dist.] 2008, pet. granted), and *Hotze v. White*, No. 01-08-00016-CV, 2010 WL 1493115, at *1 (Tex. App.—Houston [1st Dist.] Apr. 15, 2010, pet. filed) (mem. op.).  One amendment provides that the City cannot increase water and sewer rates above certain levels without prior voter approval, and the other requires voter approval before the City can increase its revenues from, among others, water and sewer fees. *See id.*

3

and ordered Intervenors to post the bond within eleven days or be dismissed from the case. After Intervenors failed to post the bond, the district court dismissed them from the case. Intervenors appeal.[2]

## DISCUSSION

We begin by addressing Intervenors' constitutional and security-bond issues. In addition to Intervenors' assertion that the entire EDJA is unconstitutional, they argue that the EDJA's security-bond provisions violate the Texas Constitution's open courts doctrine, that the EDJA's security-bond requirements do not apply to appeals, and that the evidence presented at the hearing on this matter was insufficient to support the amount of the security bond. The City asserts that the EDJA and its security-bond provisions pass constitutional muster, and further, that Intervenors' failure to post the ordered security bond deprives this Court of jurisdiction to determine the validity of the City's water and wastewater rate increases.

### *Standard of review*

In addressing a constitutional challenge to a statute, we begin with the presumption that the statute is constitutional. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003). The party challenging the constitutionality of a statute must demonstrate that it fails to meet constitutional requirements. *Id*. (citing *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 558 (Tex. 1985)).

---

[2] Intervenors filed three notices of appeal in this case: No. 03-10-423 in response to the district court's judgment in favor of the City; No. 03-10-433 in response the district court's order requiring a security bond from Intervenors; and No. 03-10-497 in response to the district court's order dismissing Intervenors for failure to post the security bond. We granted the parties' joint motion to consolidate these matters.

To the extent that resolution of these challenges turns on construction of the EDJA, we review these questions of law de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the Legislature's intent. *See id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See id.*; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

We also presume that the Legislature was aware of the background law and acted with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). We further presume that the Legislature selected statutory words, phrases, and expressions deliberately and purposefully. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Our analysis of the statutory text may also be informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005), taking into consideration such matters as the "object sought to be attained," "circumstances under which the

statute was enacted," "legislative history," "common law or former statutory provisions, including laws on the same or similar subjects," "consequences of a particular construction," and the statute's "title." *Id*. § 311.023(1)-(5), (7) (West 2005). Only when the statutory text is ambiguous do we "resort to rules of construction or extrinsic aids." *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007).

***The Expedited Declaratory Judgments Act***

The Legislature enacted the EDJA to provide issuers of public securities—e.g., the City of Houston—a method of quickly and efficiently adjudicating the validity of public securities and acts affecting those public securities. *See Rio Grande Valley Sugar Growers, Inc. v. Attorney Gen. of Tex.*, 670 S.W.2d 399, 401 (Tex. App.—Austin 1984, writ ref'd n.r.e.) ("The total thrust of the [EDJA] is to dispose of public securities validation litigation with dispatch."); *see also Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 149 (Tex. 1982) (noting that legislative purpose in enacting EDJA was to stop age-old practice of allowing one disgruntled person to stop entire bond issue by simply filing suit). The EDJA allows an issuer to bring a special, expedited declaratory judgment action to validate proposed public securities or to resolve any disputes relating to public securities. *See* Tex. Gov't Code Ann. § 1205.021. An EDJA suit is a class action that is, generally stated, binding on all persons who own property or reside within the boundaries of the issuer. *See id.* § 1205.023. The EDJA includes several provisions intended to ensure that the litigation will be resolved quickly and efficiently, yet fairly:

    (1)    Issuers have a flexible time frame and circumstances for bringing an EDJA action, *see id.* § 1205.025;

6

(2)     Issuers are allowed to provide notice of the action through publication, *id.* §§ 1205.041-.044;

(3)     Courts are empowered to enjoin other related proceedings, *id.* § 1205.061;

(4)     Courts must expedite trials and appeals, *id.* §§ 1205.065, .068(e), .069;

(5)     Final judgment is binding on all interested parties and is an injunction against future attacks, *id.* § 1205.151; and

(6)     Courts can order an opposing party, in a situation where the district court determines that the opposing party's challenge is not likely to prevail, to post a security bond covering any damages caused by delays, or face dismissal from the action, *id.* §§ 1205.101-.104.

The EDJA security-bond provisions allow an issuer, at any time before entry of judgment, to file a motion seeking an order that an opposing party or intervenor be dismissed unless they post a bond covering the issuer's possible damages or costs arising from the opposing party's participation in the suit. *Id*. § 1205.101. These damages and costs may include "any damage or cost that may occur because of the delay caused by the continued participation of the opposing party or intervenor in the action," but notably, the security bond is forfeited only if the issuer "finally prevails and obtains substantially the judgment requested in its petition." *Id.* The district court must issue an order to post such a bond unless the opposing party can show that he has a probable injury and right to recovery sufficient to entitle him to a temporary injunction. *See id.* § 1205.102; *Buckholts*, 632 S.W.2d at 149; *see also Putnam v. City of Irving*, 331 S.W.3d 869, 873 (Tex. App.—Dallas 2011, pet. filed) (applying requirements for temporary injunction to EDJA). If the opposing party fails to file the security bond, the district court must dismiss that party from the suit. Tex. Gov't Code Ann. § 1205.104.

*Applicability of the security-bond provisions*

In this case, Intervenors do not dispute that the City timely filed its motion for a security bond and thus was entitled to a hearing on that issue. *See id*. § 1205.101(b). Nor do they dispute that the City presented evidence at the hearing that the City would lose money as a result of construction delays in planned capital improvement projects if Intervenors appealed the district court's judgment. Specifically, one of the City's witnesses testified that the City would be unable to issue bonds needed to fund future water and wastewater projects—i.e., repairing and upgrading sewer lines and replacing old or outdated equipment—until the 2010 ordinance was finally approved on appeal. Another witness testified that a six-month delay in these capital improvement projects would cost the City $14 million, and a twelve-month delay would cost $28 million. These damages included increased costs related to re-bidding contracts, inflation, and continued use of outdated equipment. Intervenors did not elicit testimony or present evidence to controvert this evidence or challenge its accuracy. Instead, Hotze testified that he and Bettencourt intended to appeal the district court's judgment, but that they could only afford to post a bond in the amount of $100 each.

Although Intervenors do not specifically challenge the district court's authority to order Intervenors to post a bond, we note that once the City requested the security bond, it was mandatory under the EDJA for the district court to require a bond from Intervenors unless a narrow exception applied. Section 1205.102 expressly provides that "the court shall grant an issuer's motion for security under [the EDJA] unless, at the hearing on the motion, the opposing party or intervenor establishes that the person is entitled to a temporary injunction against the issuance of the public securities." *Id*. § 1205.102; *see Charleston v. Waller Indep. Sch. Dist.*,

8

244 S.W.3d 555, 563 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("Under section 1205.102, the trial court was required to grant [the] motion for security unless at the hearing on the motion, [the opposing party] established that he was entitled to a temporary injunction against issuance of the securities."). Here, Intervenors did not present any evidence, or even assert, that they were entitled to a temporary injunction of any type relating to this matter. Accordingly, Intervenors did not qualify for the security-bond exemption, and thus, the district court was required to grant the City's motion to order a security bond. *See* Tex. Gov't Code Ann. § 1205.102; *Charleston*, 244 S.W.3d at 563.

On appeal, Intervenors assert that the district court's order requiring a security bond from them was inappropriate because trial had already occurred and the EDJA only requires a bond prior to trial. In other words, Intervenors argue that the EDJA does not require a security bond for an appeal of an EDJA judgment.[3] We disagree. Although issuers must file a motion requesting a security bond prior to entry of final judgment, Tex. Gov't Code Ann. § 1205.101(a), nothing in the EDJA suggests that the security bond is applicable only before trial. In fact, the bond amount is determined with respect to whether the issuer "*finally* prevails," which suggests that the bond is intended to be effective through appeal. *See id*. § 1205.103(b) (emphasis added). Absent indication from the Legislature that the security bond's application and duration are somehow limited, we decline to read such a limitation into the statute. *See In re Bell*, 91 S.W.3d 784, 790 (Tex. 2002) (noting that "courts should not insert words in a statute except to give effect to clear legislative intent"). Further, the EDJA expressly

---

[3] Intervenors cite generally to the supreme court's decision in *Buckholts* to support their assertion that the bond applies only pretrial, but that case involved a pretrial dismissal for failure to pay the EDJA bond, and accordingly does not inform our decision here. *See Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 147-48 (Tex. 1983).

9

provides that if a required bond is not timely filed, "no court" has further jurisdiction over any issue that could have been raised in the suit. *Id*. §§ 1205.104(c), .105(c). If, as Intervenors suggest, the bond requirement does not apply to any post-trial matters, then the EDJA's reference to "no courts" is superfluous at best and meaningless at worst. We decline to interpret this statute in a way that renders a portion of it meaningless or superfluous. *See Columbia Med. Ctr. of Los Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."). Accordingly, we hold that the EDJA's security-bond provisions apply to both trial and appellate proceedings. We overrule Intervenors' issue on the applicability of the security bond to appellate proceedings.

### *EDJA's constitutionality*

Intervenors assert that, regardless of whether the district court here correctly followed EDJA procedures for ordering a security bond, the EDJA's security-bond provisions violate the open courts doctrine of the Texas Constitution. *See* Tex. Const. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."). Although Intervenors do not specify how the EDJA's security-bond provisions violate this doctrine, given that they fully participated in the trial below, we take their issue to be that the security bond denied Intervenors their right to appeal to this Court.

The supreme court has held that the open courts doctrine

> assures that a person bringing a well-established common-law cause of action will not suffer unreasonable or arbitrary denial of access to the courts. . . . A statute has the effect of denying access to the courts if it unreasonably abridges a

10

plaintiff's right to obtain redress for injuries caused by the wrongful acts of another. Proof of an open courts violation requires two elements: (1) a cognizable, common-law claim that is statutorily restricted, and (2) the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis.

*Yancy v. United Surgical Partners Int'l, Inc*., 236 S.W.3d 778, 783 (Tex. 2007) (internal citations omitted). We note initially that Intervenors' underlying claims are statutory, arising under the EDJA. *See* Tex. Gov't Code Ann. § 1205.062. Thus, Intervenors cannot prove at least one element of their open courts argument—i.e., that they are pursuing common-law claims. *See Yancy*, 236 S.W.3d at 783. Nevertheless, in the interest of fully considering Intervenors' primary argument here, we will address whether the EDJA security bond is an unreasonable or arbitrary restriction on Intervenors' access to the courts.

Determining whether a statutory restriction is unreasonable or arbitrary requires us to balance the Legislature's actual purpose in enacting a law against that law's interference with the individual's right of access to the courts. *Id.*; *LeCroy v. Hanlon*, 713 S.W.2d 335, 341 (Tex. 1986); *see Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 449 (Tex. 1994) (noting that issue in open courts dispute is whether requirement is unreasonable "in light of the state interest involved"). Thus, our analysis under the EDJA must balance the interests of (1) an individual whom the district court has determined is not likely to prevail on his claims, and who fails to post a bond to cover the issuer's likely damages with (2) the State's—and thus, its other citizens'—interest in facilitating public works projects without unnecessary delay and expense by enabling issuers to quickly and efficiently address challenges to their public securities. *See* Tex. Gov't Code Ann. § 1205.101; *Buckholts*, 632 S.W.2d at 149. We need not balance these interests here, however, because the supreme court has already done it for us in *Buckholts*:

11

> Since the mere existence of [a suit contesting a bond] is likely to cause damages, it was not an unreasonable or arbitrary action for the legislature to provide that a contestant be required to post bond for the damages accruing solely because of the pendency of the suit, to be paid *only if* the contestant should be *unsuccessful* in the suit. We agree with the trial court's determination that a legislative purpose in enacting the [EDJA] was to stop "the age old practice allowing one disgruntled taxpayer to stop the entire bond issue by simply filing suit." We find no denial of due process in the legislature's provision of a bond for damages to stop the abuse.

*Buckholts*, 632 S.W.2d at 149. In other words, the supreme court has determined that the Legislature's purpose in enacting the EDJA—to avoid delay and damages caused by prolonged, but ultimately unsuccessful, public-bond litigation—outweighs the interest of a contestant to proceed without posting a bond. *See id.* Although the supreme court considered the reasonableness of the EDJA bond requirement in the context of a due process challenge in *Buckholts*, its determination applies here because the guarantees encompassed in the open courts provision are part of the Texas Constitution's due process guarantee. *See Stockton v. Offenbach*, — S.W.3d —, No. 09-0446, 2011 WL 711094, at *7 (Tex. Feb. 25, 2011); *Yancy*, 236 S.W.3d at 783. Thus, application of the EDJA here does not restrict common-law claims and does not pose an unreasonable or arbitrary restriction when balanced against the EDJA's purpose. We overrule Intervenors' open courts challenge to the EDJA.[4]

Intervenors also challenge the constitutionality of the EDJA's permissive-venue provision, which allows an issuer to bring an EDJA action "in a district court of Travis County or of the county in which the issuer has its principal office." *See* Tex. Gov't Code Ann.

---

[4] We also note that the supreme court has held that the denial of an appeal does not violate the Texas Constitution's open courts provision. *See Sultan v. Mathew*, 178 S.W.3d 747, 752 (Tex. 2005) (holding that statute restricting appeal to higher court did not violate open courts provision because Legislature has "constitutional power to restrict the jurisdiction of the courts of appeals").

12

§ 1205.022. Specifically, Intervenors argue that this provision violates the Texas Constitution's separation of powers and open courts doctrines because it allows Travis County district courts to "adjudicate and bind citizens in another County in Texas." We disagree that the EDJA's venue provision violates these doctrines.

The separation of powers doctrine, *see* Tex. Const. art. II, § 1, prohibits one branch of state government from exercising power inherently belonging to another branch of state government. *General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 600 (Tex. 2001). It does not, however, prohibit the judicial branch of the state government—e.g., a Travis County district court—from reviewing the legality of administrative decisions of a local government—e.g., the City of Houston. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 72 (Tex. 2000) (rejecting separation of powers challenge to statute allowing for venue in Travis County or county where plaintiff resides). Accordingly, the separation of powers doctrine is not implicated here.

Intervenors' related assertion that permissive venue in Travis County violates the open courts doctrine fails as well. As discussed previously, the open courts doctrine "assures that a person bringing a well-established common-law cause of action will not suffer unreasonable or arbitrary denial of access to the courts." *Yancy*, 236 S.W.3d at 783. Here, besides asserting a statutory rather than common-law cause of action, Intervenors fully participated in the trial of this matter. Therefore, they cannot show that the EDJA's venue provision denied them access to the courts. *See Zimlich*, 29 S.W.3d at 72 (rejecting due process challenge to statute allowing venue in Travis County or county where plaintiff resides). Further, to the extent that their argument is that they were denied access to a court of their choice, they

13

do not cite any supporting authority. *Cf. In re Rio Grande Valley Gas Co.*, 8 S.W.3d 303, 309 (Tex. 1999) (Hecht, J., dissenting) (noting that "a party has no proprietary right to have a case decided by a particular judge or court"). Accordingly, we hold that the EDJA's permissive venue provision does not violate the open courts doctrine.

Intervenors' remaining constitutional challenges—i.e., that the entire EDJA violates due process and that the EDJA's notice provision is unconstitutional—are inadequately briefed, and therefore we do not address them. *See* Tex. R. App. P. 38.1(d) (providing that appellant's brief must contain, among other things, clear and concise argument for appellant's contentions with appropriate citations to authorities and record); *Thedford v. Union Oil Co. of Cal.*, 3 S.W.3d 609, 615 (Tex. App.—Dallas 1999, pet. denied) (holding that bare assertions of error are insufficient to preserve error). First, Intervenors' contention that the EDJA violates due process is limited to the following statement: the EDJA "allows the City of Houston, without procedural or substantive due process, to commit a constitutional taking and deprive the citizens of Houston of their property rights without due process of law." Intervenors do not provide any argument to further their assertion, and the one case they cite for support does not, as far as we can discern, provide any authority for Intervenors' proposition. *See Determan v. City of Irving, Tex.*, 609 S.W.2d 565, 569-70 (Tex. Civ. App.—Dallas 1980, no writ) (holding that city unconstitutionally impaired its contract with bondholders by *limiting* its ability to raise taxes to pay bonds). Further, they fail to address the supreme court's holding in *Buckholts* that the EDJA does not violate due process guarantees. *See Buckholts*, 632 S.W.2d at 149. Intervenors' constitutional challenge to the EDJA's notice provision is equally sparse: "[t]he Act does not require actual notice to anyone; newspaper notice is deemed sufficient." Again, Intervenors offer no argument or explanation, and in the sole case cited for support, the Houston

14

Court of Appeals refused to address the issue because it lacked jurisdiction. *See Narmah v. Waller Indep. Sch. Dist.*, 257 S.W.3d 267, 274-75 & n.6 (Tex. App.—Houston [1st Dist.] 2008, no pet.). We also note that even if we determined that Intervenors had adequately briefed these issues, they failed to demonstrate how or why the EDJA is unconstitutional. *See Spring Branch Indep. Sch. Dist.*, 695 S.W.2d at 559 (holding that party challenging statute's constitutionality must demonstrate that it fails to meet constitutional requirements). Accordingly, we overrule Intervenors' remaining constitutional challenges to the EDJA.

**Bond amount**

Having determined that the district court properly granted the City's motion for security bond and having overruled Intervenors' constitutional challenges to the EDJA, we next address the district court's order setting the amount of the bond. We review a district court's decision on the amount of a bond for an abuse of discretion. *See* Tex. Gov't Code Ann. § 1205.103(a) (requiring district court to set bond "in amount determined by the court to be sufficient" to cover possible damages); *In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d 343, 348 (Tex. App.—Texarkana 1999, no pet.) ("The court in its discretion may receive evidence on the amount of the damages and costs . . . ."). A court abuses its discretion if it acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

The EDJA mandates that the district court set the bond amount as follows:

> The bond must be in an amount determined by the court to be sufficient to cover any damage or cost, including an anticipated increase in interest rates or in a construction or financing cost, that may occur because of the delay caused by the

continued participation of the opposing party or intervenor in the acts if the issuer finally prevails and obtains substantially the judgment requested in its petition.

Tex. Gov't Code Ann. § 1205.103(b). At the hearing on its motion for security bond, the City presented undisputed evidence that, if Intervenor appealed the district court's judgment, the City would incur $14 million in extra costs for a six-month delay and $28 million for a twelve-month delay. As discussed previously, these damages included extra costs for re-bidding contracts, inflation, and continued use of outdated equipment. Intervenors' counsel argued that an appeal of this matter should not take more than twelve months, but Intervenors did not present any evidence as to the amount of the damages arising from that delay, nor did they contest the accuracy of the City's evidence. Accordingly, based on the evidence before us that supports the imposition of a larger bond and because the City does not challenge the comparatively small bond amount, we cannot say that the district court abused its discretion in setting the amount at $1 million. We overrule Intervenors' challenge to the bond amount.

### Intervenors' failure to post the bond

Intervenors do not dispute that they failed to post the required bond before the eleventh day after the district court issued the order setting the bond amount. Thus, it was mandatory for the district court to dismiss Intervenors from the suit. *See id.* § 1205.104(a). Further, Intervenors' failure to post the security bond triggered an EDJA provision that explicitly limits our jurisdiction to consider their remaining issues on appeal:

> If an appeal . . . is taken and the order of the lower court is affirmed or affirmed as modified, and the required bond is not posted before the 11th day after the date of the entry of the appropriate order, no court has further jurisdiction over any action to the extent it involves an issue that was or could have been raised in the action under this chapter . . . .

16

*Id*. § 1205.105(c). The phrase "appropriate order" in this provision refers to the order of the district court setting the bond. *Buckholts*, 632 S.W.2d at 150-51. Thus, because we have affirmed the district court's order setting the security-bond requirement and affirmed the district court's order dismissing Intervenors for failure to post that bond, we lack jurisdiction over Intervenors' remaining claims and dismiss them accordingly. *See Charleston*, 244 S.W.3d at 564 (dismissing appellant's remaining claims for lack of jurisdiction because appellant failed to post required bond); *Rio Grande Valley Sugar Growers*, 670 S.W.2d at 402 (same).

## CONCLUSION

Having overruled Intervenors' constitutional and security-bond issues, we affirm the district court's order requiring Intervenors to post a security bond of $1 million to continue as participants in this suit. We likewise affirm the district court's order dismissing Intervenors from this suit for failure to post the required security bond. We dismiss the remainder of Intervenors' appeal for lack of jurisdiction.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed in part; Dismissed in part

Filed: April 22, 2011

17