# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00137-CV

**City of Conroe, Texas; City of Magnolia, Texas; and City of Splendora, Texas, Appellants**

**v.**

**The Attorney General of Texas and San Jacinto River Authority, Appellees**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-004151, THE HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

---

## C O N C U R R I N G   A N D   D I S S E N T I N G   O P I N I O N

This case concerns the scope of the Expedited Declaratory Judgment Act (EDJA), *see generally* Tex. Gov't Code §§ 1205.001–.152, which allows issuers of bonds and other public securities to resolve certain disputes regarding their securities as to all interested parties on an expedited basis. The San Jacinto River Authority (SJRA), which has contracts (GRP Contracts) to sell water to municipalities and other customers and uses the revenue to pay down its bonds, sought two declarations regarding those contracts. The district court granted relief, and the City of Conroe, the City of Magnolia, and the City of Splendora (collectively, the Cities) appealed, arguing that the district court lacked jurisdiction over the subject matter. *See Cities of Conroe, Magnolia, & Splendora v. Paxton*, 559 S.W.3d 656, 668 (Tex. App.—Austin 2018) ("[Q]uestions regarding the EDJA's reach implicate the trial court's subject-matter jurisdiction to adjudicate the claims the Act would authorize.") [*Conroe I*], *rev'd in part sub nom. City of*

*Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444 (Tex. 2020). The majority modifies the declarations and affirms as modified. *Ante* at ___. I concur in part and dissent in part.

The Legislature enacted the EDJA as "a method of quickly and efficiently adjudicating the validity of public securities and acts affecting those public securities." *Hotze v. City of Houston*, 339 S.W.3d 809, 814 (Tex. App.—Austin 2011, no pet.); *see also Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 149 (Tex. 1982) (observing that EDJA's predecessor was enacted to "stop the age old practice [of] allowing one disgruntled taxpayer to stop the entire bond issue simply by filing suit"). The EDJA provides an issuer of public securities "an expedited declaratory procedure to establish the 'legality and validity' of public securities and 'public security authorizations.'" *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 450 (Tex. 2020) (quoting Tex. Gov't Code § 1205.021) [*Conroe II*]. Section 1205.001 defines "public security authorization" as "an action or proceeding by an issuer taken, made, or proposed to be taken or made in connection with or affecting a public security." Tex. Gov't Code § 1205.001(3). Section 1205.021 provides that an issuer may obtain declarations as to the "legality and validity of each public security authorization relating to the public securities, including if appropriate" the following:

> (A) the election at which the public securities were authorized;
>
> (B) the organization or boundaries of the issuer;
>
> (C) the imposition of an assessment, a tax, or a tax lien;
>
> (D) the execution or proposed execution of a contract;
>
> (E) the imposition of a rate, fee, charge, or toll or the enforcement of a remedy relating to the imposition of that rate, fee, charge, or toll; and
>
> (F) the pledge or encumbrance of a tax, revenue, receipts, or property to secure the public securities[.]

2

*Id.* § 1205.021(2).

The supreme court explained earlier in this case that the Legislature's "use of the word 'authorization' in defining the term 'public security authorization' indicates that an authorizing connection with or effect on the public securities is required." *Conroe II*, 602 S.W.3d at 452. More specifically, the Court explained:

> "Authorization" generally refers to "[o]fficial permission to do something," or "permission or power granted by an authority." In the public securities context, authorization has long referred to the initial actions or approvals needed to ensure the proper issuance of public securities . . . . Thus, we hold that a public security authorization must have an authorizing connection with or effect on the public securities. Ordinarily, an action or proceeding constituting a public security authorization will occur before or close in time to the public security's issuance.

*Id.* at 452–53 (internal citation and footnotes omitted). Section 1205.021's list "further clarifies which actions the Legislature views as having such an authorizing connection." *Id.* at 453.

The supreme court then turned to whether the execution of each GRP Contract constitutes a public security authorization. It analyzed this question in the context of determining whether the district court exceeded its jurisdiction by declaring that SJRA "is authorized to set rates for Participants pursuant to the procedures set forth in the GRP Contracts." *Id.* at 454. The supreme court concluded that this declaration involved the "execution . . . of a contract" because:

> In essence, the [ ] Declaration concern[ed] the legality and validity of SJRA's contracts with GRP Participants, as GRP rate orders and rates are creatures of the contracts. As we have long held, contracts must be properly executed to be valid. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (recognizing execution of contract is required for enforceable contract). The execution of these contracts undoubtedly has an authorizing connection with the bonds: the GRP contracts were executed in 2010, in close temporal proximity to the bonds' issuance, and their revenues were immediately pledged as the sole source of repayment securing SJRA's bonds. Furthermore, "the execution . . . of a

contract" explicitly qualifies as a public security authorization under section 1205.021(2). [Tex.] Gov't Code § 1205.021(2)(D).

*Id.* The court applied the same logic to the district court court's declaration that "SJRA's fiscal year 2017 rate, Rate Order, and the GRP Contracts, including the Contract with Conroe, are legal and valid." *Id.* at 456. It explained, "The EDJA confers [upon the district court] jurisdiction to declare whether SJRA's execution of each GRP contract was legal and valid, but it does not extend to declaring whether a specific rate amount set in a particular rate order is valid." *Id.*

On remand from the supreme court, SJRA asked the district court to declare "[t]he GRP Contracts were legally and validly executed" (Declaration 1), and "SJRA has contractual authority under the GRP Contracts to issue rate orders and rates that comply with the GRP Contracts because those contracts were validly executed" (Declaration 2). The Cities argue that the district court exceeded its jurisdiction because both declarations purport to declare whether SJRA's counterparties validly executed the contracts. The majority reasons that the definition of public security authorization as "an action or proceeding by an *issuer*," Tex. Govt Code § 1205.001(3) (emphasis added), should be read together with Subsection 1205.021(2)(D) and concludes that "only the issuer's execution of a contract meets the definition of, and therefore constitutes, a public security authorization." *Ante* at ___. Thus, "the trial court's jurisdiction under the EDJA was limited to declaring whether execution of the GRP Contracts by SJRA— here, the 'issuer'—was legal and valid." *Id.* at ___.

I understand those provisions differently. The EDJA does not define "the execution . . . of a contract," but the term has a well-defined legal meaning. *See Maxim Crane Works, L.P. v. Zurich Am. Ins.*, 642 S.W.3d 551, 557 (Tex. 2022) ("We use definitions prescribed by the Legislature and any technical or particular meaning the words have

4

acquired[.]" (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008))). Black's Law Dictionary defines "execute" as "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form." *Execute*, Black's Law Dictionary (11th ed. 2019). Quoting this definition with approval, the supreme court has explained, "The execution of a contract includes the performance of all acts necessary to render it complete as an instrument." *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) (per curiam). Execution of a contract is not unilateral: both parties must express their mutual consent to be bound by the contract. *See*, *e.g.*, *Phillips v. Carlton Energy Group, LLC*, 475 S.W.3d 265, 277 (Tex. 2015) ("If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract." (citing *Mid-Continent Cas.*, 323 S.W.3d at 157))). If the contract is not properly executed by *both* parties, it is not valid and enforceable. *See Conroe II*, 602 S.W.3d at 454 (stating that "contracts must be properly executed to be valid"); *Sonnichsen*, 221 S.W.3d at 635 (explaining that "one of the elements generally required to create an enforceable contract is '[e]xecution and delivery of the contract with an intent that it become mutual and binding on both parties'" (quoting *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.— Houston [14th Dist.] 2000, no pet.))). Applying this meaning, Subsection 1201.021(2)(D) necessarily authorizes a court to declare whether the issuer and its counterparties legally and validly executed a contract.

I do not read the definition of public security authorization—"an action or proceeding by an issuer," Tex. Gov't Code § 1205.001(3)—as limiting the scope of this authority for two reasons. First, the supreme court has already explained in this case that the list in Section 1205.021(2) "clarifies which actions" have the "authorizing connection" required by Section

5

1205.001(3). *See Conroe II*, 602 S.W.3d at 453 ("The list in section 1205.021(2) further clarifies which actions the Legislature views as having such an authorizing connection."). These items do not concern only "an action or proceeding by an issuer." For example, the statute authorizes a court to declare the legality and validity of "the election at which the public securities were authorized" and "the imposition of an assessment, a tax, or a tax lien." *See* Tex. Gov't Code § 1205.021(2)(A), (C). It does not state that the court may declare only the legality and validity of the issuer's actions or proceedings in connection with those matters. If the Legislature had intended to limit the scope of relief in that way, it would have said so; the provision that precedes the list authorizes a declaratory judgment as to "the authority of the issuer to issue the public securities." *Id.* § 1205.021(1). I must presume the difference in language reflects the Legislature's intent. *See Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) ("[W]e 'presume the Legislature chose statutory language deliberately and purposefully,' and that it likewise excluded language deliberately and purposefully." (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014))).

This construction furthers the legislative purpose behind the EDJA, which is "to dispose of public securities validation litigation with dispatch." *Hotze*, 339 S.W.3d at 814 (citing *Rio Grande Valley Sugar Growers, Inc. v. Attorney Gen. of Tex.*, 670 S.W.2d 399, 401 (Tex. App.—Austin 1984, writ ref'd n.r.e.)). Construing Subsection 1205.021(2)(D) to authorize declarations that a contract was validly executed by the issuer and its counterparties furthers this purpose. As we explained the first time we heard this case, the GRP Contracts required SJRA to set rates and charges sufficient to service the bonds. *See Conroe I*, 559 S.W.3d at 675–76. Declaring the GRP Contracts to be incontestable served as assurances to bondholders that SJRA would meet its obligations. The majority's construction of Subsection 1205.021(2)(D) would

6

preclude SJRA from determining whether any of the GRP Contracts even exist. *See Conroe II*, 602 S.W.3d at 454 ("As we have long held, contracts must be properly executed to be valid."). I cannot interpret Subsection 1205.021(2)(D) in a way that undermines the EDJA's purpose absent clearer signs the Legislature intended it.

Subsection 1205.021(D) authorizes a court to declare whether a contract was validly executed by the issuer and its counterparties.[1] *See Mid-Continent Cas.*, 323 S.W.3d at 157; *Sonnichsen*, 221 S.W.3d at 635. I would not modify Declaration 1 to state that the GRP Contracts were validly executed by SJRA alone because SJRA is entitled to the relief it received. As the supreme court has explained, "SJRA may not obtain EDJA declarations concerning the Cities' in personam rights and liabilities. The EDJA permits only in rem declarations concerning property rights." *See Conroe II*, 602 S.W.3d at 456. An "'in rem action affects the interests of all persons in the world in the thing,' but an "in rem judgment's effect is limited only 'to the property that supports jurisdiction.'" *Id.* at 458 (quoting *Bodine v. Webb*, 992 S.W.2d 672, 676 (Tex. App.—Austin 1999, pet. denied)). A judgment that SJRA and a counterparty validly executed a GRP Contract would declare "the interests of all persons in the world" in the contract but would not establish the in personam liabilities of any party. *See id.*

I agree, however, that Declaration 2 "must be cabined to addressing only the valid execution of the GRP Contracts and may not purport to declare the general nature or scope of SJRA's authority to issue rate orders and rates." *Ante* at ___. And because modifying

---

[1] The majority points out that the supreme court stated, "[T]he EDJA confers jurisdiction to declare whether *SJRA's* execution of each GRP contract was legal and valid." *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 456 (Tex. 2020) (emphasis added). The majority views this statement as providing "additional insight into the supreme court's understanding that the declarations at issue pertained only to SJRA's execution of the GRP Contracts." *Ante* at ___. I disagree because the sole question before that court was whether SJRA's role in the execution of the GRP contracts was valid. *See Conroe II*, 602 S.W.3d at 456 & n. 20.

Declaration 2 in that way would make it "essentially mirror Declaration 1," it should be redacted as superfluous. *Id.* at ___. I would then proceed to address the Cities' constitutional challenges. I respectfully concur in part and dissent in part.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Filed:  July 22, 2022