# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00137-CV

---

**City of Conroe, Texas; City of Magnolia, Texas; and City of Splendora, Texas, Appellants**

**v.**

**The Attorney General of Texas and San Jacinto River Authority, Appellees**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-004151, THE HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

---

## O P I N I O N

This is an appeal from the district court's order in a suit seeking a declaratory judgment pursuant to the Expedited Declaratory Judgment Act (EDJA), which permits issuers of bonds and other public securities to resolve certain disputes regarding their securities as to all interested parties on an expedited basis. *See* Tex. Gov't Code §§ 1205.001-.151. The San Jacinto River Authority (SJRA), which has contracts to sell water to cities and other customers and uses the revenue to pay off its bonds, sought declarations regarding those contracts. On cross-motions for summary judgment, the district court rendered judgment granting SJRA's request for two declarations. The City of Conroe, the City of Magnolia, and the City of Splendora (collectively, the Cities) appealed the district court's order arguing principally that the court lacked jurisdiction to make the requested declarations. We will modify the district court's order and, as modified, affirm it.

# BACKGROUND

The underlying dispute between the parties relates to a Groundwater Reduction Plan (GRP) and certain contracts (GRP Contracts) or agreements executed between the Cities and SJRA, which have been discussed in other court opinions.[1] Our description of underlying events and transactions is drawn from those opinions.

The Cities are located in Montgomery County and as that county's population grew significantly in recent decades, so did concerns about the county's reliance on groundwater drawn from the Gulf Coast Aquifer. To address these concerns, the Legislature formed the Lone Star Groundwater Conservation District (Lone Star), which, in 2008, required all large-volume groundwater users—including the Cities—to develop and implement plans for substantially reducing their usage. Mandatory groundwater-usage cutbacks took effect in January 2016.

SJRA is a legislatively created conservation and reclamation district charged with regulating the water resources of the San Jacinto River Basin. In anticipation of mandatory groundwater-usage cutbacks, SJRA developed the GRP, which entailed drawing surface water from Lake Conroe, treating it, and selling it to large-volume users. To finance the GRP, SJRA issued seven series of bonds between 2009 and 2016. For each bond series, SJRA's Board of Directors adopted a resolution authorizing the bonds' issuance and delivery and specifying the bonds' purpose and terms. The resolutions pledged revenues from GRP water-sales contracts to service the bond debt, maintain a bond reserve fund, and cover operation and maintenance expenses for the GRP project.

---

[1] *See, e.g.*, *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444 (Tex. 2020); *Cities of Conroe, Magnolia, & Splendora v. Paxton*, 559 S.W.3d 656 (Tex. App.—Austin 2018), *aff'd in part, rev'd and remanded in part sub nom City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444 (Tex. 2020).

In 2010, in accordance with its enabling legislation, SJRA entered into GRP Contracts with approximately 80 water-system operators, including the Cities, agreeing to provide them with surface water in exchange for monthly payments. To comply with several requirements of the Texas Government Code and the Texas Water Code, SJRA sought and obtained the Attorney General's approval of all the bonds and contracts. *See* Tex. Gov't Code §§ 1202.003 (review and approval of public securities by attorney general), 1371.057 (review and approval of obligation, credit agreement, and contract by attorney general). After receiving the Attorney General's approval, the Comptroller registered them. *See id.* §§ 1202.005 (registration of public security by comptroller), 1371.058 (registration of obligation, credit agreement, and contract by comptroller).

SJRA began delivering water to the Cities in September 2015. Lone Star's groundwater-usage cutbacks took effect in January 2016. Shortly thereafter, the City of Conroe and other parties to GRP Contracts challenged the groundwater-usage cutbacks as unconstitutional and in excess of Lone Star's statutory authority.[2] The dispute expanded to include SJRA after SJRA adopted a new rate order, effective for the 2017 fiscal year that increased the rates and charges for water under the GRP Contracts. The Conroe and Magnolia City Councils each passed resolutions accusing SJRA of overcharging for water in violation of its respective GRP Contract and questioning the legitimacy of the GRP program. The resolutions directed city officials to refuse payment of the increased rates and to pay SJRA the old rates.

---

[2] Jurisdictional rulings in the case were reviewed on interlocutory appeal in *Lone Star Groundwater Conservation Dist. v. City of Conroe*, 515 S.W.3d 406 (Tex. App.—Beaumont 2017, no pet.), and the parties ultimately settled their claims. *See Lone Star Ground Water Conservation Dist. v. City of Conroe*, No. 09-18-00383-CV, 2019 WL 611519 (Tex. App.—Beaumont Feb. 14, 2019, no pet.) (mem. op.).

3

In response, SJRA filed the underlying suit in Travis County, alleging that the rate increase was justified and seeking four declarations pursuant to the EDJA. The EDJA provides an "issuer" of "public securities" an expedited declaratory procedure to establish the "legality and validity" of public securities and "public securities authorizations." *Id.* § 1205.021. A proceeding under the EDJA is *in rem* and requires only the Attorney General's participation. Other interested parties may, however, choose to opt in after posting a bond. *Id.* §§ 1205.023, .041-.044, .063. The declarations SJRA sought addressed SJRA's authority to set rates pursuant to the procedures set forth in the GRP Contracts (the Authority Declaration); its compliance with the GRP Contracts in setting the rates (the Compliance Declaration); and the legality and validity of the 2017 fiscal year rate, the Rate Order, and the GRP Contracts (the Validity Declaration). SJRA also sought a declaration that the City of Conroe's refusal to pay the fiscal year 2017 rate was illegal and invalid and that its failure to pay constituted a breach of the GRP Contract (the Breach of Contract Declaration).

After SJRA gave notice of the EDJA action, the Cities, along with other parties to GRP Contracts, opted in as interested parties. The Cities then filed substantially similar pleas to the jurisdiction. The Cities asserted that the trial court lacked jurisdiction to make the requested declarations in the EDJA action because SJRA's claims did not seek declarations as to the "legality and validity" of a "public security authorization," but instead sought to litigate what were essentially suits on contracts and were, therefore, beyond the scope of the EDJA. The Cities also asserted governmental immunity as an independent jurisdictional bar. The trial court denied the pleas to the jurisdiction, and the Cities perfected an interlocutory appeal.

On appeal, this Court recognized that "questions regarding the EDJA's reach implicate the trial court's subject-matter jurisdiction to adjudicate the claims the Act would

4

authorize." *See Cities of Conroe, Magnolia, and Splendora v. Paxton*, 559 S.W.3d 656, 668 (Tex. App.—Austin 2018), *aff'd in part, rev'd and remanded in part sub nom City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444 (Tex. 2020). This Court held that the trial court properly denied the pleas to the jurisdiction as to the Authority Declaration, the Compliance Declaration, and the Validity Declaration. This Court reasoned that the EDJA conferred jurisdiction over these "declarations as to SJRA's own rights and the legal status of its own acts, without explicit regard to any other person or party." *Id.* at 678. By contrast, the Court concluded that the Breach of Contract Declaration concerned *in personam* rights and therefore did not fall within the EDJA's grant of *in rem* jurisdiction. *Id.* at 678, 683. The Court held that the trial court erred by denying the plea to the jurisdiction as to the Breach of Contract Declaration. The Court also held that the trial court did not err in denying the Cities' plea to the jurisdiction based on governmental immunity. *Id.* at 680-81.

The Cities filed a petition for review in the Texas Supreme Court concerning this Court's disposition of their interlocutory appeal.[3] The dispute between the Cities and the SJRA in the supreme court centered around whether the GRP Contracts, SJRA's Rate Order, and the rates SJRA set met the definition of "public security authorizations" in section 1205.001(3) of the EDJA. *See* Tex. Gov't Code § 1205.001(3) ("'Public security authorization'" means an action or proceeding by an issuer taken, made, or proposed to be taken or made in connection with or affecting a public security."). The Cities maintained that they did not and, consequently, the trial court lacked jurisdiction to make declarations, pursuant to the EDJA, about their "legality" or "validity." The Attorney General and SJRA argued that the items at issue did meet

---

[3] The Cities did not challenge the Court's ruling dismissing the Breach of Contract Declaration for want of jurisdiction.

5

the definition of "public security authorization" and, "[b]ecause the declarations address the legality and validity of these public security authorizations [], the trial court had jurisdiction to make the declarations under the EDJA." *City of Conroe*, 602 S.W.3d at 451.

In its opinion, the supreme court analyzed whether, and to what extent, each of the requested declarations concerned the legality and validity of a "public security authorization" as that term is used in the EDJA. With regard to the Authority Declaration, the court held that because the rate orders and rates "are creatures of" the GRP Contracts, this declaration concerned, at least in part, the legality and validity of those contracts. *Id.* at 454. The court determined that the execution of the contracts had the required "authorizing connection" with the bonds—public securities—both because they were executed "in close temporal proximity" to the bonds' issuance and because their revenues were pledged as the sole source of repayment securing the bonds. The court held that execution of the GRP Contracts met the statutory definition of a public security authorization and, consequently, "insofar as the Authority Declaration concerns the valid execution of the GRP Contracts, the EDJA permits the court to exercise jurisdiction over this declaration." *Id.*[4]

With regard to the Compliance Declaration, which concerned the validity of the rate order and rates set therein, the court held that neither the rate order nor the rates had the authorizing connection with the bonds required to qualify as public security authorizations. *Id.* The court went on to state, however, that to the extent the Compliance Declaration pertained to whether the GRP Contracts were validly executed such that they vested SJRA with authority to issue a rate order and rates that complied with the GRP Contracts, the trial court had jurisdiction

---

[4] The court also noted that "the execution . . . of a contract" explicitly qualifies as a "public security authorization" under section 1205.021(2). *See* Tex. Gov't Code § 1205.021(2)(D).

6

over a request for a declaration to that effect. *Id*. ("To the extent the Compliance Declaration pertains to SJRA's contractual *authority* to issue a rate order and rates that comply with the GRP contracts because those contracts were validly executed, SJRA may request an EDJA declaration to that effect." (emphasis in original) (citing Tex. Gov't Code § 1205.021(2)(D) (providing that *execution* of contract meets definition of public security authorization))). Again, the court concluded that in an EDJA suit the trial court has jurisdiction to make a declaration about the legality and validity of a public security authorization—here, the execution of the GRP Contracts. *See* Tex. Gov't Code § 1205.021(2) ("An issuer may bring an action under this chapter to obtain a declaratory judgment as to . . . the legality and validity of each public security authorization relating to the public securities . . . .").

Finally, with regard to the Validity Declaration, the court determined that it essentially restated and combined the Authority Declaration and the Compliance Declaration. The court held, therefore, that its analysis of the proper scope of those declarations applied and concluded that, as with those declarations, the EDJA conferred jurisdiction only to declare whether "SJRA's execution of each GRP contract was legal and valid." *City of Conroe*, 602 S.W.3d at 456. Significantly, the supreme court held that under its construction, the EDJA permits only *in rem* declarations concerning property rights and not declarations concerning the Cities' *in personam* rights and liabilities. The court summarized its holding as follows:

> [W]e hold that a public security authorization under the EDJA must have an authorizing connection with or effect on the public securities at issue. The execution of the GRP contracts is the only action or proceeding in question that constitutes a public security authorization under the EDJA. Section 1205.021 therefore gives the trial court jurisdiction to declare whether the execution of those contracts was legal and valid. We reject SJRA's contention that the EDJA also permits declarations concerning compliance with the contracts. We further hold that SJRA's rate order and rates established under the contracts do not

7

implicate SJRA's statutory authority to impose a rate. Therefore, they are not public security authorizations, and the trial court lacks jurisdiction to declare their legality or validity.

*Id.* (citations omitted). Restating its holding that "the EDJA permits the trial court to exercise jurisdiction over SJRA's proposed Authority and Validity Declarations insofar as they concern the valid execution of the GRP contracts," the court reversed this Court's judgment in part and remanded the case to the trial court for further proceedings. *Id.* at 458.

On remand, SJRA filed a motion for summary judgment in which it asserted that, as a matter of law, it was entitled to the following declarations:

- The GRP Contracts were legally and validly executed.

- SJRA has contractual authority under the GRP Contracts to issue rate orders and rates that comply with the GRP Contracts because those contracts were validly executed.

The Cities filed a cross-motion for summary judgment in which they contended that (1) it would violate the supreme court's mandate for the trial court to make either of the requested declarations and (2) the trial court lacked jurisdiction under the EDJA to make either of the requested declarations or to declare the parties' rights under the incontestability statutes. After a hearing, the trial court signed an order that stated:

The Court orders that ("SJRA") Traditional Motion for Summary Judgment is GRANTED and the Court issues these declarations:

1. The GRP Contracts were legally and validly executed; and

2. SJRA has contractual authority under the GRP Contracts to issue rate orders and rates that comply with the GRP Contracts because those contracts were validly executed.

8

In the paragraph immediately preceding the ordering language, the trial court included the following recitation ("the incontestability interpretation"):

> Having reviewed the Motion, the responses, and other pleading, papers, and evidence on file, as well as the arguments of counsel, the Court concludes that the role of the incontestability statutes in EDJA litigation is to establish as a matter of law the legality and validity of a contract.

The trial court's order also denied the Cities' cross-motion for summary judgment.

The Cities then perfected this appeal. The Cities maintain that the trial court erred by making Declaration 1 because it lacked jurisdiction under the EDJA to make declarations about "actions of counterparties to SJRA's GRP Contracts or the status of the counterparties' execution of those contracts." With respect to Declaration 2, the Cities assert that the trial court erred by making this declaration because, like Declaration 1, it purports to make a declaration about the status of actions taken by SJRA's counterparties, which the Cities argue is beyond the scope of the trial court's jurisdiction under the EDJA. Additionally, the Cities argue that the declaration is susceptible of being interpreted to mean that valid execution of the GRP Contracts is the only action necessary to authorize SJRA to issue Rate Orders and rates and could be construed as a declaration by the trial court that, in addition to valid execution of the GRP Contracts, all requirements pertaining to SJRA's Rate Orders have also been met. In the Cities' view, this potential interpretation of Declaration 2 could be used by SJRA to argue that its Rate Orders and rates do, in fact, comply with the GRP Contracts, which would effectively convert it into the Compliance Declaration that the supreme court expressly held that the trial court did not have jurisdiction to make. The Cities also maintain that the trial court's incontestability interpretation was erroneous.

9

## DISCUSSION

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, the reviewing court must determine all questions presented and render the judgment that the trial court should have rendered. *Id.*

This case also involves the interpretation of statutory language, which we review de novo "to ascertain and give effect to the Legislature's intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). We look for that intent first and foremost in the plain language of the statutory provision. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). We give effect to all words of a provision and avoid constructions that would render any part of it meaningless. *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000).

The EDJA "allows an issuer to bring a special, expedited declaratory judgment action to validate proposed public securities or to resolve any disputes relating to public securities." *Hotze v. City of Houston*, 339 S.W.3d 809, 814 (Tex. App.—Austin 2011, no pet.); *see also Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 149 (Tex. 1982) (explaining that purpose of promulgating EDJA was to prevent "one disgruntled taxpayer" from stopping "the entire bond issue by simply filing suit"). In general, a suit under the EDJA is "binding on all persons who own property or reside within the boundaries of the issuer." *Hotze*, 339 S.W.3d at 814 (citing Tex. Gov't Code § 1205.023). Moreover, the EDJA only allows issuers to seek declarations regarding a limited set of topics. *Guadalupe-Blanco River Auth. v. Texas Attorney Gen.*, No. 03-14-00393-CV, 2015 WL 868871 at *4 (Tex. App.—Austin Feb. 26, 2015, pet.

10

denied) (mem. op.). Specifically, under the EDJA, an "issuer may bring an action . . . to obtain a declaratory judgment" regarding the following:

(1) the authority of the issuer to issue the public securities;

(2) the legality and validity of each public security authorization relating to the public securities, including if appropriate:

    (A) the election at which the public securities were authorized;

    (B) the organization or boundaries of the issuer;

    (C) the imposition of an assessment, a tax, or a tax lien;

    (D) the execution or proposed execution of a contract;

    (E) the imposition of a rate, fee, charge, or toll or the enforcement of a remedy relating to the imposition of that rate, fee, charge, or toll; and

    (F) the pledge or encumbrance of a tax, revenue, receipts, or property to secure the public securities;

(3) the legality and validity of each expenditure or proposed expenditure of money relating to the public securities; and

(4) the legality and validity of the public securities.

Tex. Gov't Code § 1205.021. The present case involves a request for a declaration regarding the validity of a "public security authorization." As previously described, the Texas Supreme Court identified the relevant "public security authorization" as the "execution" of the GRP Contracts. The trial court's Declaration 1 is properly limited to declaring the legality and validity of the "execution" of the GRP Contracts. However, the parties join issue on whether Declaration 1 must be further limited to addressing the "execution" of the GRP Contract by SJRA alone or, alternatively, whether the trial court had jurisdiction to make a declaration that encompasses the "execution" by both SJRA and each of the counterparties to the GRP Contracts.

11

Resolution of this dispute is found in the text of the EDJA itself. The statute defines a "public security authorization" as "an *action* or proceeding *by an issuer* taken, made or proposed to be taken or made in connection with or affecting a public security." *Id.* § 1205.001(3) (emphases added). Section 1205.021(2) includes a list of actions or proceedings that constitute "public security authorizations" including "the execution or proposed execution of a contract." *Id.* § 1205.021(2). Reading these provisions together, it is evident that only the issuer's execution of a contract meets the definition of, and therefore constitutes, a public security authorization. It follows, then, that the trial court's jurisdiction under the EDJA was limited to declaring whether execution of the GRP Contracts by SJRA—here, the "issuer"—was legal and valid. This limitation is consistent with this Court's precedent as well as with the supreme court's holdings in *City of Conroe v. San Jacinto River Authority*. This Court has previously noted that the EDJA creates a proceeding that allows an issuer to "obtain declarations establishing the 'legality' or 'validity' of the securities and certain related *official* proceedings (termed 'public security authorizations')." *See Ex parte City of El Paso*, 563 S.W.3d 517, 521 (Tex. App.—Austin 2018, pet. denied). This Court recognized that public security authorizations are "official" proceedings—i.e., actions or proceedings of an issuer. *Id.*; *see* Tex. Gov't Code § 1205.001(1) (specifying that "'[i]ssuer' means an agency, authority, board, body politic, commission, department, district, instrumentality, municipality or other political subdivision, or public corporation of this state"). In *City of Conroe*, the supreme court noted that, in the public securities context, the term "authorization" refers to "the initial actions or approvals needed to ensure the proper issuance of public securities" and held that "the EDJA confers jurisdiction to declare whether SJRA's execution of each GRP Contract was legal and valid." *City of Conroe*, 602 S.W.3d at 452, 456. The supreme court also noted that, before that tribunal, "SJRA

12

insist[ed] it simply seeks determinations as to SJRA's own rights and the legal status *of its own acts* without explicit regard to any other party." *See id.* at 456 n.20. This statement provides additional insight into the supreme court's understanding that the declarations at issue pertained only to SJRA's execution of the GRP Contracts.

For the foregoing reasons, to clarify Declaration 1's scope and to ensure that it addresses only issues within the trial court's jurisdiction under the EDJA, we modify that declaration to state the following: "1. The GRP Contracts were legally and validly executed by SJRA."

We next consider the Cities' challenge to Declaration 2. As previously stated, the Cities contend that, as worded, the declaration could be construed in a manner that exceeds the scope of a declaration that would fall within the trial court's EDJA jurisdiction as defined by the Texas Supreme Court in *City of Conroe*. In its opinion, when discussing the requested Compliance Declaration, the court held:

> To the extent the Compliance Declaration pertains to SJRA's contractual *authority* to issue a rate order and rates that comply with the GRP contracts because those contracts were validly executed, SJRA may request an EDJA declaration to that effect.

*City of Conroe*, 602 S.W.3d at 455 (emphasis in original). In its opinion, the supreme court emphasized the distinction between the execution of the GRP Contracts, which it held was within the trial court's EDJA jurisdiction, and all other matters related to the GRP Contracts, which it held were not within the trial court's EDJA jurisdiction. *Id.* at 456 (EDJA jurisdiction does not extend to declaring whether specific rate set in particular rate order is valid). In discussing the requested Compliance Declaration, the court stated that "the EDJA does not treat compliance with a contract as a public security authorization." *Id.* at 454. The court had already

13

stated that SJRA could obtain an EDJA declaration regarding whether the GRP Contracts were validly executed and, consistent with that determination, the supreme court stated that SJRA's requested Compliance Declaration was within the trial court's EDJA jurisdiction to the extent that it pertained to valid execution of the GRP Contracts and the effect of valid execution on SJRA's contractual authority to issue a compliant rate order and rates. Put differently, the supreme court stated that to the extent SJRA wanted a declaration that its contractual authority to issue rate orders and rates could not be challenged on the ground that the GRP Contracts were not validly executed, it could seek a declaration "to that effect." We understand the words "to that effect" to refer to a declaration that the GRP Contracts were validly executed, a declaration the supreme court had already explained was within the scope of the trial court's jurisdiction under the EDJA.

Declaration 2 states that "SJRA has contractual authority under the GRP Contracts to issue rate orders and rates that comply with the GRP contracts because those contracts were validly executed." We agree with the Cities that the wording of this declaration is susceptible of an interpretation that exceeds the scope of the trial court's EDJA jurisdiction. As worded, Declaration 2 could be interpreted to declare that the valid execution of the GRP Contracts forecloses *any* challenge to SJRA's authority to issue rate orders and rates pursuant to those contracts, as opposed to simply shielding SJRA from a challenge based on the validity of the GRP Contracts' execution by SJRA. To be consistent with the limits of the trial court's EDJA jurisdiction, Declaration 2 must be cabined to addressing only the valid execution of the GRP Contracts by SJRA and may not purport to declare the general nature or scope of SJRA's authority to issue rate orders and rates. We conclude that Declaration 2 is not sufficiently limited and, consequently, the trial court lacked jurisdiction to make it. Declaration 1, as modified,

14

provides confirmation that SJRA's execution of the GRP Contracts was valid and legal and SJRA may use that declaration for whatever purpose it chooses, including to foreclose a challenge to its authority to issue rate orders or rates based on a claim that SJRA did not legally or validly execute the GRP Contracts. Modifying Declaration 2 to essentially mirror Declaration 1 would serve no purpose and result in redundant declarations. We therefore delete Declaration 2 from the trial court's order.

Finally, we consider the incontestability interpretation—the trial court's recitation in its order that it "concludes that the role of the incontestability statutes in EDJA litigation is to establish as a matter of law the legality and validity of a contract." This statement does not constitute a declaration as to any of the topics listed in EDJA section 1205.021, which are the only declarations the issuer is authorized to seek in an EDJA action and, correlatively, are the only declarations that the trial court has jurisdiction to make in an action brought under the EDJA. *See* Tex. Gov't Code § 1205.021 (identifying declarations issuer may bring action to obtain under EDJA); *see Guadalupe-Blanco River Auth.*, 2015 WL 868871, at *4 ("[The EDJA] only allows issuers to seek declarations regarding a limited set of topics."). Nowhere does the EDJA provide that the trial court in an action brought pursuant to the statute may make declarations or determinations that purport to construe the statute or its terms. In its opinion, the supreme court neither authorized nor instructed the trial court to make general conclusions or declarations about the incontestability statutes. *See City of Conroe*, 602 S.W.3d at 456 n.19 ("Should the parties choose, they may present their arguments on remand regarding the role of incontestability statutes in EDJA litigation."). Rather, the supreme court stated that the parties could "present arguments" about the role of the incontestability statues on remand in support of or in opposition to the requested declarations. In keeping with the limited scope of section

15

1205.021, the provision that delineates what an issuer may seek to obtain in an action brought pursuant to the EDJA, SJRA's motion for summary judgment did not request that the trial court make declarations that construe the statute or make "conclusions" about the meaning or general effect of any of its terms. The trial court's jurisdiction in this EDJA action was limited to making, or refusing to make, the declarations SJRA was authorized to request. Consequently, we modify the second paragraph of the trial court's order to strike the incontestability interpretation.

## CONCLUSION

Having reviewed the questions presented in this appeal from the trial court's order granting SJRA's motion for summary judgment and denying the Cities' cross-motion for summary judgment, we modify the trial court's order and render the following judgment that we conclude the trial court should have rendered:

> Pending before the Court is San Jacinto River Authority's ("SJRA") Traditional Motion for Summary Judgment following remand by the Supreme Court of Texas. Having reviewed the Motion, the responses, and other pleadings, papers, and evidence on file, as well as the arguments of counsel, the Court concludes that SJRA's Motion should be GRANTED IN PART and makes the following Declaration:
>
> The GRP Contracts were legally and validly executed by SJRA.
>
> The Court further ORDERS that the Cities' Cross-Motion for Summary Judgment is GRANTED IN PART and denies SJRA's request to declare that "SJRA has contractual authority under the GRP Contracts to issue rate orders and rates that comply with the GRP Contracts because those contracts were validly executed."

As so modified, the trial court's order is affirmed.

16

_____
Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Smith
  Concurring and Dissenting Opinion by Justice Smith

Modified and, as Modified, Affirmed

Filed:   July 22, 2022

17